## UNITED STATES *v.* DASHIEL.

1. Where a writ of error is taken to this court by a plaintiff below, who pre-viously to taking the writ issues execution below and gets a partial but not a complete satisfaction on his judgment, the writ will not, in consequence of such execution merely, be dismissed.
2. Levy of an execution, even if made on personal property sufficient to satisfy the execution, is not satisfaction of the judgment, and, accordingly, therefore, does not extinguish it if the levy have been abandoned at the request of the debtor and for his advantage; as *ex. gr.* the better to enable him to find purchasers for his property.

THE United States brought suit at *common law*—" debt on bond"—for $20,085.74 against Major Dashiel, a paymaster in the army of the United States, and his sureties. Dashiel denied every part of the demand, but claimed specially a deduction of $13,000 from the sum sued for, on the ground that while travelling in remote regions of Florida, where he was going with the whole sum in gold coin to pay the army, he had, without the least want of care on his part, been robbed of about $16,000; as was proved among other ways by the fact that a portion of the money, $3000, easily iden-

tified, was discovered among negro slaves of the neighborhood, and got back.

The jury under a charge from the court made allowance 'for the part of which Major Dashiel alleged that he had been robbed; and found for the United States for a portion only of the sum claimed, to wit, $10,318.22. Judgment was entered accordingly. Not being satisfied with judgment for this amount, the United States, on the 1st September, 1860, took a writ of error to this court. Dashiel had also excepted. On the 15th April, 1860, however—before the government had thus taken its writ of error—*it sued out execution,* and, Major Dashiel having waived advertisement, levied on a large amount of real estate and *on eight slaves.* A portion of the real estate was sold June 5th, 1860; $5275 having been got for it. The sale was then adjourned.

The only evidence as to what led to an adjournment of the sale appeared in a letter from the deputy marshal who superintended it to the acting marshal, his principal, sent up in the record, which came up on *certiorari* for diminution after the writ of error was taken out. In regard to this, the record, or amended record as it may be called, after setting out the execution, levy, and return, thus in substance ran:

"Accompanying said return and inclosed with the execution, *whether as part of the return or explanatory of the same,* as made a part of the record, is the following letter, in words, to wit:

SAN ANTONIO, TEXAS, June 7th, 1860.

To W. MASTERSON, ESQ.,

Acting United States Marshal, Austin.

DEAR SIR: Your note of the 4th June came to hand yesterday. You learned by my note of the 5th that *I* had adjourned the sale, after the bids amounted to $5275, *as directed* by *your* note of the 2d. I now act upon your note of the 4th, received yesterday, and return, as you directed, the execution. I think the attorney will certainly approve of *your* action in staying the sale on the bids reaching $5000; and I cannot but think that he will, upon seeing *the abundance of the levy,* and learning that there is *no hindrances* thrown in the way of a forced collection, but *a modest*

*petition* for time the better to enable the defendant to find purchasers for his property, now in the clasp of the law. The *sympathies of this community* for Major Dashiel, where he has long lived, with his family, *all plead for extension of time*, if possible, to the next January Term of the honorable District Court. The interest still accruing, would the United States be much injured by the extension?

Yours, respectfully,

S. NEWTON."

*Mr. Paschall, for Dashiel, defendant in error*, now moved to dismiss the writ of error; the ground assigned in the motion having been that after judgment rendered "there was an execution sued out by the plaintiff, a levy, and sale, and satisfaction."

In favor of the motion he argued:

I. It is an old rule of the law, one not departed from either in modern times, that a levy on sufficient personal property operates, generally speaking, as an extinguishment of a judgment. So far back as Queen Elizabeth's time, Croke gives us the case of *Mountney* v. *Andrews*,* where it is said, that "to a *scire facias* on a judgment the defendant may plead execution on a *fi. fa.* for the same debt, *without showing that the writ is returned;*" implying, of course, that the levy was satisfaction. Lord Raymond, in a later day (Queen Anne's), gives us *Clerk* v. *Withers*,† in which the marginal abstract is this: "When the defendant's goods are seized on a *fi. fa.* the debt is *discharged.*" Nor is this ancient English law alone. It has been nowhere so explicitly declared, or so far carried out, as in the United States. "When an officer, under an execution, has once levied upon the property of the defendant sufficient to satisfy the execution," says the Supreme Court of New York, A.D. 1815,‡ "he cannot make a second levy. *This* principle appears to be *well* settled." Indeed, as that court remarks in the case cited, it had been previously held in New York,§ that a sheriff could

---

* Croke Eliz. 237.          † Page, 1072; S. C. 1 Salkeld, 322.
‡ Hoyt *v.* Hudson, 12 Johnson, 208.
§ Reed *v.* Pruyn, 7 Id. 428

not take security on a *fi. fa.*, and still hold the execution in his hand, using it afterwards to enforce payment; and they say, "According to the principle here recognized, it was immaterial whether the property first levied on was sufficient to satisfy the execution or not." In 1825, we have in the same Supreme Court the case of *Ex parte Lawrence*,\* where the abstract is—"A levy on personal property sufficient to satisfy a *fi..fa.*, is an extinguishment of the judgment on which it issued." " This," say the court there, " has been *often* held;" and they declared that the judgment therefore ceased by such levy to be a lien on real estate which it previously bound. Numerous other New York cases may be referred to for the same law;† if, indeed, after a matter has been once solemnly adjudged, it is respectful to refer to cases affirming it with each reverting term.

In New England, the great name of Chief Justice Parsons, delivering the opinion of his court, sanctions the same position.‡ He says:

" When goods sufficient to satisfy an execution are seized on *fi. fa.*, the debtor is discharged, even though the sheriff waste the goods or misapply the money arising from the sale, or does not return his execution; for by a lawful seizure the debtor has lost his property in the goods."

And these principles of law, found alike in England and in our older States, were early adopted, and are completely encysted in the jurisprudence of Texas, from which this case comes. There, as elsewhere, the courts declare, that *primâ facie* a levy of goods, if valid and on property sufficient, is " satisfaction."§

There is really no authoritative case contrary to these decisions about the effect of a levy, though there are extrajudicial *dicta*, and some head-notes reporting them, and

---

\* 4 Cowen, 417.

† Jackson *v.* Bowen, 7 Cowen, 13; Wood *v.* Torrey, 6 Wendell, 562; Shepard *v.* Rowe, 14 Id. 262.

‡ Ladd *v.* Blunt, 4 Massachusetts, 402

§ Bryan *v.* Bridge, 10 Texas, 151.

giving *dicta* rather than points adjudged, which might lead to a conclusion that there was. Thus in *Green* v. *Burke*, in New York, A.D. 1840,* it is said in the syllabus:

"A levy by virtue of an execution is not *always* a satisfaction of the judgment; though the property levied on be of sufficient value to satisfy the execution, and the defendant be not guilty of eloignment. It is only satisfaction *submodo*. If the levy fail to produce satisfaction in fact without any fault of the plaintiff, he may proceed to obtain execution."

But, without affirming or denying what is here said, it is enough to remark that the case itself was one where the so-called "levy" was made by a constable who was a *minor*, and who had abandoned the levy to relieve himself from the consequence of assuming the duties of the office within age—an office which it was a fraud in him to attempt to fill. It was held, and rightly of course, that *such* a levy—no levy whatever—was not a satisfaction.

So, in *The People* v. *Hopsen*,† Bronson, C. J., says:

"If the broad ground has not yet been taken, it is time it should be asserted that a mere levy upon sufficient personal property, without anything more, never amounts to a satisfaction of the judgment. There is no foundation in reason for a different rule. . . . *It often happens that a levy is overreached by some other lien, is abandoned for the benefit of the debtor, or defeated by his misconduct. In such cases there is no color for saying that the judgment is gone; and yet they are included in the notion that a levy satisfies the debt.* . . . The true rule I take to be this, that the judgment is satisfied when the execution has been so issued as to change the title, or in some way deprive the debtor of his property."

If Bronson, C. J., meant only to say that the presumption of satisfaction from a levy on sufficient property, was not one *juris et de jure*—one not incapable of being rebutted—a rule which had certain exceptions—as the italicized portion of his remarks might lead us to suppose he did mean—there

---

* 23 Wendell, 490.                    † 1 Denio, 578.

is nothing to be denied by us. If, however, he meant to say that the rule established by his predecessors, in his own court, in its best days, had "no foundation in reason,"—a meaning difficult, with proper respect to him, to suppose—then we may observe, as the fact is, and as he himself de-- clares* it was, that his remarks on this subject were not necessary to the decision; and were made only at the wish of counsel; and, we may observe also, that they are put by the reporter as *dicta* simply "per Bronson, C. J.;" imperti- nent really to the case. What *he*, Bronson, C. J., under these circumstances "took to be the true rule" is not vastly im- portant in considering what the rule is as established by judicial precedents.

It must be observed that neither this case where Bronson, C. J., thus speaks, nor *Green* v. *Burke* before it, where we have extracted the loose syllabus, were cases at all concern- ing writs of error, or of motions to dismiss or quash them.

Will the doctrine, declared in the New York case of *Os- trander* v. *Walter*,† and recognized in some few others,‡ be set up as a reply?—" that where an execution has been levied upon property of the defendant, and abandoned by his re- quest and for his benefit, this will not amount to a satisfac- tion of the judgment?" If it is, the answer is that the rule does not apply to any facts of this case. Assuming—what is not true in law—that the *letter* of the deputy marshal was a part of the marshal's "return" to his execution, yet it is plain that the sale was stayed by the deputy in consequence of an order from the marshal. "I had adjourned the sale," he writes, "as directed by *your* note of the 2d." "I think the attorney will certainly approve *your* action in staying the sale," &c. There were "no hindrances" thrown in the way by Major Dashiel. He had forwarded a sale by waiving ad- vertisement; and even the "modest petition" seems to have come from others rather than from himself. It was "the

---

* Page 577.                                          † 2 Hill, 329.

‡ Porter *v.* Boone, 1 Watts & Sergeant, 251; Walker *v.* Bradley, 2 Ar- kansas, 595.

sympathies of the community," where he had long lived and all his family, which pleaded " for an extension" of time : not himself.

In this state of facts it is not necessary to consider what is the effect of a surrender made in consequence of a debtor's request when the creditor has his hand full of property.  A striking effect of such an act may be seen in *Magniac* v. *Thomson*,* where the act, done clearly for the debtor's benefit, cost the creditor $80,000.  Creditors who have pushed their debtors to the · rall with all the sharp instruments of the law must be careful what they do.  In seizing a man's property and putting it under a sheriff's wand, they do an extreme act.  They can, indeed, have satisfaction if they will pursue such odious measures.  But if they become compunctious and alarmed, and afraid to go to the *ultima ratio* of the law, and sell, they throw their chance away.  That is their affair : and they had better have thought of it before they made the levy.  If a creditor, with his eyes open, were at his debtor's request and for his debtor's benefit deliberately to enter satisfaction of record, who doubts that his writ of error would be gone?  If having a levy, from which, as in this case, the whole debt could have been obtained, he abandons it, wherein differs the case?  But this is useless discussion; for there is no evidence that Dashiel asked anything.

Will it be said again that the rule does not apply to a levy made on land?  Granted.  But here the levy was on slaves; chattels as our laws then stood.

Or that the rule has several exceptions?  Granted again.  But unless you show that they apply to us, of what pertinence is the argument?

Or will it be said that there is no evidence that the levy was sufficient?  The answer is twofold; first of law and second of fact.  Of law, in that the presumption of law is, when a levy is made, on goods, that the goods are sufficient to satisfy the levy.  In *Bryan* v. *Bridge*,† as here, a levy had

---

* 2 Wallace, Jr., 209.                    † 10 Texas, 153.

been made on slaves. The court say: "If the levy had been valid the plaintiffs in the execution could have had no other until it had *been shown* that the levy so first made was not sufficient. *Primâ facie, it* was *sufficient.*" In our case without doubt the levy was, in fact, sufficient. The letter of the deputy marshal shows it. He speaks of "the abundance" of the levy. The property was large.

We have then these general rules: (i) that a levy on sufficient personal property is satisfaction; and (ii) that the *primâ facie* presumption is that any levy on personal property is on sufficient property.

But if a judgment is satisfied, how can error lie on it? "When a party," says an eminent Missouri judge, delivering the opinion of the Supreme Court of that State,* "voluntarily extinguishes his own judgment, he cannot afterwards complain of it. He is under no necessity of suing out execution to enforce his judgment and receive satisfaction of it; and if by his own voluntary act he extinguishes his judgment, what is there on which a writ of error can operate?"

In Pennsylvania, also, the doctrine so forcibly above expressed was acknowledged and acted on by its Supreme Court, Gibson, C. J., being then at the head of it. A motion was made there in *Laughlin* v. *Peebles*† to quash a writ of error; various reasons were put forward why the writ should be quashed: among them that the plaintiff had in some way received the benefit of his judgment. This was enough: and the reporter says:

"The court being satisfied from the evidence exhibited that the plaintiff had received the benefit of his judgment, on this ground *alone*, quashed the writ of error."

II. Independently of this ground of satisfaction of the debt and extinction of the base of error, comes the settled and here kindred rule about election. A party having several remedies must elect. On this principle it is, rather

* Scott, J., in Cassell *v.* Fagin, 11 Missouri, 902.
† 1 Pennsylvania, 115.

perhaps than on the other, that proceeds the case of *Hall* **v.** *Hrabrowski* in the Supreme Court of Alabama.* The syllabus of the case is:

" Where a plaintiff who had obtained judgment below, sued out a writ of error to this court to reverse it, and whilst the cause was pending here, sued out execution on his judgment and collected the money, and the fact not being brought to the notice of this court until after its judgment had been pronounced, reversing and remanding the cause, an order was made directing that the certificate of this court should not issue, until the debt, interest, and costs below were refunded to the defendant."

The court in giving its opinion says:

" If the motion had been made before judgment was rendered in this court we would have directed a stay of all proceedings; it being obviously unjust that the plaintiff should collect the amount of his judgment which he is complaining of as erroneous, and *in which he may on another trial fail to recover anything.* It is both vexatious and oppressive in the plaintiff to prosecute a suit here to reverse a judgment the correctness of which he impliedly affirms by coercing payment from the defendant under it."

The observations of the court above italicized have particular force in this case, for Dashiel denied the whole claim; both parties excepted; and on a second trial the government may get nothing.

Indeed, in thus applying this rule of election—the rule, that where a party has two remedies, and exhausts one, he shall not afterwards invoke the other—we do but carry out principles that exist in analogous matters. Thus, a defendant cannot have a writ of error after *auditâ querelâ.*† So, where a party had *agreed* that he would not prosecute a writ of error, he cannot afterwards be allowed to do so, but is estopped.‡ So, where he voluntarily elected to take a nonsuit, he cannot have a writ of error.§

---

* 9 Alabama, 278; and see Bradford *v.* Bush, 10 Id. 274.

† Brooks *v.* Hunt, 17 Johnson, 486.

‡ Executors of Wright v. Smith, 1 Term, 388-9.

§ Kent *v.* Hunter, 9 Georgia, 207.

The fact that our suit was one at common law will be noted. In cases in chancery there may be many appeals; appeals coming from different parts of it. *Blossom* v. *Railroad Company*,\* illustrates our idea; and it is this which renders *Merriam* v. *Haas*, reported just before this case, no precedent in it. That was a case in chancery; a bill to foreclose a mortgage; nor was there any *execution levied*.

*Mr. Speed, A. G., contra;* citing and relying on *Merriam* v. *Haas.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Defendants move to dismiss the case because it appears by the record, as they allege in the motion, that the judgment in the court below was in favor of the plaintiffs, and, that before suing out the writ of error, they obtained satisfaction of the judgment "by execution and sale."

1. Principal defendant had been a paymaster in the army of the United States, and the record shows that the suit was commenced against him and the other defendant, as one of his sureties on the official bond of the former, given for the faithful discharge of his duties. Breach of the bond as assigned in the declaration was that the principal obligor failed to pay over, or account for the sum of twenty thousand and eighty-five dollars and seventy-four cents of the public moneys intrusted to his keeping, and for which he and his sureties were jointly and severally liable.

2. Claim of the plaintiffs was for that sum, as shown in the treasury transcript, but the defendants in their answer denied the whole claim, and they also pleaded specially that the principal obligor was entitled to a credit of thirteen thousand dollars, because, as they alleged, he was robbed, without any negligence or fault on his part, of that amount of the moneys so intrusted to his custody, during the period covered by the declaration. Verdict was for the plaintiffs

---

\* 1 Wallace, 657.

for the sum of ten thousand three hundred and eighteen dollars and twenty-two cents, and on the eighteenth day of January, 1860, judgment was entered on the verdict. Both parties excepted, during the trial, to the rulings and instructions of the court, and the record shows that their respective exceptions were duly allowed.

3. Execution was issued on the judgment on the fifteenth day of April, in the same year, and the return of the marshal shows that on the twenty-eighth day of the same month he seized certain real property and slaves sufficient in all to satisfy the judgment. Formality of an advertisement, prior to sale, was omitted by the marshal at the request of the principal defendant, and on the fifth day of June following, the marshal sold certain parcels of the real property at public auction, amounting in the whole to the sum of five thousand two hundred and seventy-five dollars, as appears by his return. Nearly half the amount of the judgment was in that manner satisfied, but the clear inference from the return of the marshal, and the accompanying exhibit, is that the sale was suspended and discontinued at the request of the principal defendant and for his benefit. Request for the postponement of the sale came from him, and it was granted by the marshal, as stated in the record, the better to enable the defendant to find purchasers for his property. Writ of error was sued out by plaintiffs on the first day of September, 1860, and was duly entered here at the term next succeeding, and since that time the case has been pending in this court.

4. Motion to dismiss is grounded solely upon the alleged fact that the judgment was satisfied before the writ of error was sued out and prosecuted. Matters of fact alleged in a motion to dismiss, if controverted, must be determined by the court. Actual satisfaction beyond the amount specified in the return of the marshal cannot be pretended, but the theory is, that the levy of the execution in the manner stated affords conclusive evidence that the whole amount was paid, and it must be admitted that one or two of the decided cases referred to appear to give some countenance to that view of

the law; that is, they assert the general doctrine that the levy of an execution on personal property sufficient to satisfy the execution, operates *per se* as an extinguishment of the judgment.* None of those cases, however, afford any support to the theory that any such effect will flow from the issuing of an execution, and the levying of the same upon land. On the contrary, the rule is well settled that in the latter case no such presumption arises, because the judgment debtor sustains no loss by the mere levy of the execution, and the creditor gains nothing beyond what he already had by the lien of his judgment.† Reason given for the distinction is that the land in the case supposed remains in the possession of the defendant, and he continues to receive and enjoy the rents and profits.‡ Many qualifications also exist to the general rule as applied to the levy of an execution upon the goods of the judgment debtor, as might be illustrated and enforced by numerous decided cases. Where the goods seized are taken out of the possession of the debtor, and they are sufficient to satisfy the execution, it is doubtless true, that if the marshal or sheriff wastes the goods, or they are lost or destroyed by the negligence or fault of the officer, or if he misapplies the proceeds of the sale, or retains the goods and does not return the execution, the debtor is discharged; but if the levy is overreached by a prior lien, or is abandoned at the request of the debtor or for his benefit, or is defeated by his misconduct, the levy is not a satisfaction of the judgment.§ Rightly understood, the presumption is only a *primâ facie* one in any case, and the whole extent of the rule is that the judgment is satisfied when the execution has been so used as to change the title of the goods, or in some way to deprive the debtor of his property. When the property is lost to the debtor in consequence of the legal

---

* Mountney *v.* Andrews, Croke Eliz. 237; Clerk *v.* Withers, 1 Salkeld, 322; Ladd *v.* Blunt, 4 Massachusetts, 403; Ex parte Lawrence, 4 Cowen, 417.

† Shepard *v.* Rowe, 14 Wendell, 260; Taylor *v.* Ranney, 4 Hill, 621.

‡ Reynolds *v.* Rogers, 5 Ohio, 174.

§ Green *v.* Burke, 23 Wendell, 501; Ostrander *v.* Walter, 2 Hill, 329; People *v.* Hopson, 1 Denio, 578.

measures which the creditor has pursued, the debt, says Bronson, C. J., is gone, although the creditor may not have been paid. Under those circumstances the creditor must take his remedy against the officer, and if there be no such remedy he must bear the loss.*

Tested by these rules, and in the light of these authorities, it is very clear that the theory of fact assumed in the motion cannot be sustained. Satisfaction of the judgment beyond the amount specified in the return of the marshal is not only not proved, but the allegation is disproved by the amended record.

5. Amended record undoubtedly shows that an execution was issued on the judgment, and that the same was partially satisfied before the writ of error in this case was prosecuted: but the defendants scarcely venture to contend that a partial satisfaction of the judgment before the writ of error is sued out, is a bar to the writ of error, or that it can be quashed or dismissed for any such reason. Doubt may have existed upon that subject in the early history of the common law; but if so, it was entirely removed by the elaborate judgment of Lord C. J. Willes, in the case of *Meriton v. Stevens*,† which is most emphatically indorsed in a well-considered opinion of this court. Nothing is better settled at the common law, says Mr. Justice Story, in the case of *Boyle* v. *Zacharie et al.*,‡ than the doctrine that a supersedeas, in order to stay proceedings on an execution, must come before there is a levy made under the execution; for if it come afterwards, the sheriff is at liberty to proceed, upon a writ of *venditioni exponas*, to sell the goods.

Form of the supersedeas at common law was "that if the judgment be not executed before the receipt of the supersedeas, the sheriff is to stay from executing any process of execution until the writ of error is determined." Settled construction of that order was, "that if the execution be begun before a writ of error or supersedeas is delivered, the

---

* Taylor *v.* Ranney, 4 Hill, 621.          † Willes, 272
‡ 6 Peters, 659.

sheriff ought to proceed to complete the execution so far as he has gone." Directions in the leading case were accordingly that the sheriff should proceed to the sale of the goods he had already levied, and that he should return the money into court to abide the event of the writ of error.*

6. Effect of a writ of error under the twenty-second section of the Judiciary Act, is substantially the same as that of the writ of error at common law, and the practice and course of proceedings in the appellate tribunals are the same except so far as they have been modified by acts of Congress, or by the rules and decisions of this court. Service of a writ of error, in the practice of this court, is the lodging of a copy of the same in the clerk's office where the record remains.† Whenever a defendant sues out a writ of error, and he desires that it may operate as a supersedeas, he is required to do two things, and if either is omitted, he fails to accomplish his object: 1, he must serve the writ of error as aforesaid, within ten days, "Sundays exclusive," after the rendition of the judgment; and 2, he must give bond with sureties to the satisfaction of the court, for the benefit of the plaintiff, in a sum sufficient to secure the whole judgment in case it be affirmed.‡ Security for costs only is required of the defendant when the writ of error sued out by him does not stay the execution, and he is not compelled, in any case, to make the writ of error a supersedeas, although it may be sued out within ten days after the judgment.§

Plaintiff also may bring error to reverse his own judgment, where injustice has been done him, or where it is for a less sum than he claims; but he, like the defendant, is required to give bond to answer for costs.‖ Writs of error at common law, whether sued out by plaintiff or defendant, operated in all cases as a supersedeas; but it has never been heard in a court of justice since the decision in the case of

---

* Meriton *v.* Stevens, Willes, 282.

† Brooks *v.* Norris, 11 Howard, 204.

‡ Catlett *v.* Brodie, 9 Wheaton, 553; Stafford *v.* Union Bank, 16 Howard, 135.    § 1 Stat. at Large, 404.

‖ Johnson v. Jebb, 3 Burrow, 1772; Sarles *v.* Hyatt, 1 Cowen, 254.

*Meriton* v. *Stevens*, that they had any retroactive effect, or any effect at all, until they were allowed and served.

Applying these rules to the present case, it is clear that there was no conflict between the action of the marshal in obtaining partial satisfaction of the judgment in this case, and the pending writ of error which was subsequently sued out and allowed. Partial satisfaction of a judgment, whether obtained by a levy or voluntary payment, is not, and never was a bar to a writ of error, where it appeared that the levy was made, or the payment was received prior to the service of the writ, and there is no well-considered case which affords the slightest support to any such proposition. Subsequent payment, unless in full, would have no greater effect; but it is unnecessary to examine that point, as no such question is presented for decision. Where the alleged satisfaction is not in full, and was obtained prior to the allowance of the writ of error, the authorities are unanimous that it does not impair the right of the plaintiff to prosecute the writ, and it is only necessary to refer to a standard writer upon the subject to show that the rule as here stated has prevailed in the parent country from a very early period in the history of her jurisprudence to the present time.*

Substance of the rule as there laid down is, that where the execution is issued before the writ of error is sued out, if the sheriff has commenced to levy under the execution, he must proceed to complete what he has begun; but if when notified of the writ of error he has not commenced to levy, he cannot obey the command of the execution.† Even the levy of the execution after the supersedeas has commenced to operate, is no bar to the writ of error; but the court, on due application, will enjoin the proceedings and set the execution aside, and it has been held that the sheriff and all the parties acting in the matter, are liable in trespass.‡

---

\* 1 Chitty's Archbold's Practice, 558 (ed. 1862).

† 2 Williams's Saunders, 101, h.; Perkins *v.* Woolaston, 1 Salkeld, 321; Milstead *v.* Coppard, 5 Term, 272; Kennaird *v.* Lyall, 7 East, 296; Belshaw *v.* Marshall, 4 Barnewall & Adolphus, 336; Messiter *v.* Dinely, 4 Taunt. 280

‡ 2 Williams's Saunders, 101, g.; 3 Bacon's Abridgment, Error, H.; Dudley *v.* Stokes, 2 W. Blackstone, 1183.

Neither the decisions of the courts, therefore, nor text writers, afford any countenance to the theory that partial satisfaction of the execution operates as an extinguishment of the judgment, or a release of errors, or that it takes away or impairs the jurisdiction of this court. Carefully examined it will be found that the cases cited assert no such doctrine, but that every one of them proceeds upon the ground that where the plaintiff has sued out execution, enforced his judgment, and obtained full satisfaction, there is nothing left on which a writ of error can operate.

Import of the argument is, that a writ of error lies only on a final judgment, and that the plaintiff, when he accepts full satisfaction for his judgment, removes the only foundation on which the writ of error can be allowed. Suffice it to say, in answer to that suggestion, that no such question arises in the case, which is all that it is necessary to say upon that subject at the present time.

The motion to dismiss is                           DENIED.


Mr. Justice GRIER (with whom concurred NELSON and SWAYNE, JJ.), dissenting:

I think this writ of error ought to be dismissed. The plaintiff having elected to take execution and satisfy his judgment, has no longer any judgment upon which the writ can operate. His election to accept and execute his judgment below is a *retraxit* of his writ of error. Such has been the unanimous decision of every court of law that has passed on the question. Appeals in chancery can furnish no precedent for a contrary decision. A decree in chancery may have a dozen different parts, some of which may stand good and be executed, while others may be litigated on appeal. A judgment at law is one thing. The plaintiff cannot divide his claim into parts, and when he obtains judgment for part, accept that part, and prosecute his suit for more. Having a right to elect to pursue his judgment or his writ of error he cannot elect to have both.