CARSON LUMBER CO. v. ST. LOUIS & S. F. R. CO.

(Circuit Court of Appeals, Eighth Circuit. November 14, 1913.)

No. 3,930.

1. APPEAL AND ERROR (§ 162*)—PERSONS ENTITLED TO REVIEW—ACCEPTANCE OF BENEFITS OF JUDGMENT.

While it is the general rule that one who accepts the benefit of a judgment is precluded from asking its review, the rule is not absolute, and does not apply to a case where the judgment is divisible, and a plaintiff in error accepts payment of the part in his favor which was not contested, and would not be affected by the reversal of the other part.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 179, 981, 982, 984–990; Dec. Dig. § 162.*]

2. CARRIERS (§ 189*)—MILLING IN TRANSIT RATES—RIGHTS OF SHIPPER.

Plaintiff shipped lumber in to a milling point on defendant's railroad, at a time when a milling in transit privilege was given by defendant's tariff schedule, but the lumber was required to be shipped out under certain specified rates then in force. Before plaintiff shipped out the lumber, such schedule of rates on intrastate shipments had been changed, and lower rates established to conform to an order of a state commission, and plaintiff shipped under such lower rates. Held, that not having complied with the conditions under which the special privilege was given, plaintiff was not entitled to the benefit of it.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 162, 854, 855, 859–865; Dec. Dig. § 189.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

In Error to the District Court of the United States for the Eastern District of Oklahoma; John C. Pollock, Judge.

Action at law by the Carson Lumber Company against the St. Louis & San Francisco Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

For opinion below, see 198 Fed. 311.

Plaintiff in error, a domestic corporation, doing a general wholesale and retail lumber business, with offices at Hugo in the state of Oklahoma, brought suit against the defendant railroad company to recover $4,449.19, claimed to be due it as a refund under a milling in transit arrangement accorded by a certain published tariff of defendant in error, under which, at different dates between August 8, 1907, and February 27, 1908, plaintiff made shipments of lumber from various points in Oklahoma over defendant's line of railway into Hugo (then in the Indian Territory, now in the state of Oklahoma), amounting in the aggregate to 8,966,900 pounds, for resawing, planing and reconsigning privileges. The tariff in question was known as St. Louis and San Francisco No. 25—D. Item 17 thereof prescribed the scale of rates which governed when reference was made thereto. Item 20 concerned the application of such milling in transit rates, and provided that: "These rates apply only when shipments of lumber to be rehandled are billed into milling or stop-over points at local tariff rates; the difference between local rates and the above rates will be refunded when lumber is reshipped via the Frisco, the weight of lumber reshipped to be sixty-five per cent. of the inbound weight." It is upon this item that plaintiff in error founds its claim.

June 26, 1907, defendant in error filed and made effective amendment No. 11 to said tariff 25—D, which made the following modification of that tariff: "The rates named herein unless otherwise specified, will only apply on shipments of forest products, car loads, which move into milling, resawing, reconsigning or concentrating points, and when the manufactured products or shipments that have received concentrating privilege are reshipped via the St. Louis & San Francisco Railroad from such milling, resawing, reconsigning or concentrating points to destinations named in and under rates covered by tariffs Nos. 186, 200, 368, 546, 599, 900 and 904 Series, but will not apply on shipments moving between points within the state of Arkansas or between points within the state of Missouri."

It will be seen that this amendment was in effect when plaintiff in error made its inbound shipments as aforesaid. The local rates paid by plaintiff in error were those established by defendant's tariff known as 856—B, I. C. C. 5130. Reference to Frisco Tariff 904—A, which is the only tariff mentioned in the numbers set out in amendment No. 11, above quoted, that is applicable to these shipments, discloses the following provision: "Rates named herein for any given point from stations located in any particular group are to be the maximum rates which will apply from points in the group figuring to such point of destination and are not intended to be maximum rates to apply from point named within such group where rates from point of origin can be made lower than that named in the tariff by use of the Local Distance Tariff 856 Series, I. C. C. Series 5130."

The effect of these various provisions of the tariffs and amendments thereto, which were in force at the time plaintiff in error made its inbound shipments, was that the shipper was permitted to avail himself of the milling in transit privilege accorded, provided he shipped into Hugo at local tariff rates and reshipped to the extent required via the Frisco under rates named in Tariff 904 Series or 856—B at his option.

November 16, 1907, Oklahoma and the Indian Territory were admitted as the present state of Oklahoma. The tariffs to which reference has been made remained in force until March 2, 1908. Up to this time plaintiff in error had made no outbound shipments from Hugo, and on that day the Corporation Commission of the State of Oklahoma promulgated and put in force a schedule of rates known as Leland's Lumber Tariff No. 1, Frisco 557—D. These rates were lower than such outbound rates would have been under the tariffs

in force when the inbound shipments were made, to wit: 904 Series and 856—B. In obedience to an order of the Oklahoma Corporation Commission, by which it was required to enforce the rates named in said Leland's Lumber Tariff, defendant in error·published a certain tariff known as Oklahoma Lumber Tariff No. 1, effective March 2, 1908, and canceled all previous milling in transit privileges applicable to shipments within the state of Oklahoma. Plaintiff in error did not begin the reshipments involved in this controversy until March 4, 1908. It paid on such outbound shipments the rates fixed by said Oklahoma Corporation Commission, and did not pay the rates in force on such outbound shipments at the time the inbound shipments were made. With the specific rates named in these various tariffs we are not concerned. The following clause in the agreed statement of facts, upon which the case was tried, furnishes a sufficient basis for our discussion in that respect: "It is further agreed that the Corporation Commission rates paid by the plaintiff on said outbound shipments were lower than the outbound rates that were in force when inbound shipments were made; and it is further agreed that all of the said inbound shipments were made into Hugo prior to the taking effect of the Corporation Commission rates, and that all of the said outbound shipments were made after the taking effect of said Corporation Commission rates."

The local tariff rates paid by plaintiff in error on said inbound shipments amounted to $6,193.14. The flat rate named in item 17 on such shipments amounts to $1,700.78, making a difference of $4,449.19, which is the amount of refund claimed. Of this, $386.61 arose upon eight interstate shipments; the balance, $4,062.48, concerned shipments wholly within the state of Oklahoma. In the fifth paragraph of the agreed statement of facts "defendant recognizes its liability upon those cars mentioned in plaintiff's petition, and which moved to interstate points, there being eight of such shipments." The court below held that except as to such interstate shipments plaintiff could not recover. Judgment was entered accordingly.

L. L. Wood, of Dallas, Tex., Howe & Stanley, of Hugo, Okl. (Wood & Wood, of Dallas, Tex., on the brief), for plaintiff in error.

Fred E. Suits, of Oklahoma City, Okl. (W. F. Evans, of St. Louis, Mo., and R. A. Kleinschmidt, of Oklahoma City, Okl., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

VAN VALKENBURGH, District Judge (after stating the facts as above). [1] At the threshold of the case we encounter the following disclosure made by the record:

"Comes now the Carson Lumber Company, plaintiff in the above-entitled action, and hereby enters satisfaction of judgment in the above-entitled case in accordance with the fifth paragraph of the agreed statement of facts covering rebate on eight interstate shipments amounting to $386.61, for which judgment was rendered in its favor on June 1, 1912."

And the suggestion is made that plaintiff in error is estopped to prosecute this writ to the reversal of the decree below with respect to the refund on intrastate shipments. It is undoubtedly the general rule that a party who obtains the benefit of an order or judgment, and accepts the benefit or receives the advantage, shall be afterwards precluded from asking that the order or judgment be reviewed. Nevertheless, this rule is not absolute where the judgment or decree is not so indivisible that it must be sustained or reversed as a whole. It has no application to cases where the appellant is shown to be so absolutely entitled to the sum collected upon the judgment that the reversal

209 F.—13

of it will not affect his right to the amount accepted (Reynes v. Dumont, 130 U. S. 354–394, 9 Sup. Ct. 486, 32 L. Ed. 934), especially where there is not present conduct which is inconsistent with the claim of a right to reverse the judgment or decree, which it is sought to bring into review (Embry v. Palmer, 107 U. S. 3–8, 2 Sup. Ct. 25, 27 L. Ed. 346; Merriam v. Haas, 3 Wall. 687, 18 L. Ed. 29; United States v. Dashiel, 3 Wall. 688, 18 L. Ed. 268). The defendant in error did not contest the refund claimed on interstate shipments. Its liability therefor was recognized in the agreed statement of facts. The amount awarded, paid, and accepted constitutes no part of what is in controversy.

[2] The serious difficulty which confronts plaintiff in error is that it seeks strict enforcement of an alleged contract whose conditions it has itself obviously failed to perform. As was said by the trial judge:

"A milling in transit rate is an entirety, and must be accepted and carried out in its entirety, or not at all."

It is applicable only when all its substantial terms and provisions are observed. The railroad, in tendering such a privilege, undoubtedly relies upon the revenues which it expects will accrue from such a traffic arrangement. These depend upon the terms and conditions of the tariffs then in force. An inspection of those in effect when these inbound shipments moved, make it apparent that, to entitle a shipper to refund, he must not only pay the existing local tariff rates upon inbound shipments, but must thereafter bill out under prescribed outbound rates. If the shipper pays less than the outbound rate in force when his inbound shipment was made, he has not complied with the express terms of the tariff, nor has the carrier received the full rate which induced it to concede the milling in transit privilege. It is agreed that the outbound rates named in tariff 904 Series and 856—B, I. C. C. Series 5130, were in force when these inbound shipments were made. It is also conceded that plaintiff in error did not pay those rates, but did pay the lower rates established by the Oklahoma Corporation Commission. Therefore it has not complied, either in letter or in spirit, with the terms and conditions of the tariffs upon which its cause of action is based.

We have no occasion to consider the legal aspect of a case where the carrier has arbitrarily changed its outbound rate after the inbound shipments have been made and the shipper has tendered the former outbound rate and demanded the refund. Such a situation is not here presented. It would appear that the railroad company was obliged to put in force a new and lower rate as to intrastate shipments as ordered by the Corporation Commission of the new state of Oklahoma. It had been compelled to cancel and had canceled its former tariffs applicable to such shipments. It would have been unlawful for it to charge or receive rates other than those established—not only so, but plaintiff in error voluntarily paid the lower rate, and in so doing failed to bring itself within the terms of the former milling in transit privilege. Within the confines of its own jurisdiction the action of the Oklahoma Commission was the exercise of paramount rate-making power, and, as

such, superseded prior arrangements as to rates upon which it operated.

Our conclusion is that plaintiff in error did not make its outbound shipments upon such terms and conditions as entitled it to the benefit of the previously existing milling in transit privilege. Moreover, the tariffs in which that privilege was tendered were no longer in effect. The allowance of this claim would operate as a departure from rates and schedules filed, published and effective at the time the outbound shipments were made. It would pave the way for the return of those special concessions, discriminations, and advantages which it is the policy of the law to discountenance and prevent. New Haven R. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 26 Sup. Ct. 272, 50 L. Ed. 515; Armour Packing Co. v. United States, 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681.

For the reasons stated the judgment below must be affirmed.