**ST. LOUIS & SAN FRANCISCO RY. CO.**

v.

**TEXAS AUTOMATIC SPRINKLER CO.**

No. 4978.

Court of Civil Appeals of Texas.

El Paso.

Dec. 30, 1953.

Rehearing Denied Jan. 27, 1954.

Burford, Ryburn, Hincks & Ford, Dallas, for appellant.

Hassell & Hassell, J. W. Hassell, Jr., Dallas, for appellee.

FRASER, Justice.

This is an appeal from the County Court at Law, No. One, of Dallas County, Texas, a suit by St. Louis-San Francisco Railway Company against Texas Automatic Sprinkler Company to collect an alleged freight undercharge in the amount of Nine Hundred Seventy-one Dollars and Forty Cents ($971.40). Trial was had before the court without a jury and the trial court rendered judgment for the defendant. Plaintiff has appealed. The parties will be referred to as they stood in the trial court.

Appellant complains of the decision of the trial court, saying that such in effect construed the tariff so as to give defendant the benefit of through rate privileges. The tariff in question is called Freight Tariff No. 3912–E and provides that shippers may interrupt through shipments at Memphis, Tenn. for the purpose of fabricating material shipped and still enjoy the lower rate available to through shipments. Defendant was a manufacturer of sprinkling systems and had a fabricating plant at Memphis where he assembled parts of the systems from pipe shipped in from mills. The plaintiff claimed that because some of the pipe had to be threaded at Memphis for the purpose of affixing flanges thereto and

some threading was done, that defendant was not entitled to the lower through shipment rate as threading was in violation of Exception No. 1 of Item 105 of the said Freight Tariff. Item 105 is as follows:

"Item 105

"Definition of Fabrication in Transit Privileges

"(a) Fabrication in transit privileges authorized in Sections Nos. 1 and 2 of this tariff are hereby defined as the stopping in transit of Iron or Steel Articles named in Item 110, in carloads, at fabricating points shown in Sections Nos. 1 and 2 herein for the purpose of:

| | |
|---|---|
| "Bending, | Drilling, |
| Bolting, | Flanging, |
| Boring, | Gagging, |
| Burning, | (2) Galvanizing and manufacture (See |
| Counter Sinking | Exception No. 1) |
| Cutting, | Painting, |
| "Planing, | Straightening, |
| Punching, | Tapping, |
| Reaming, | Threading (See |
| Riveting, | Exception No. 1), |
| Sawing, | Upsetting, |
| Shearing, | Welding, |

at such fabricating points and the forwarding of the fabricated product from the fabricating point, in carloads, to a subsequent and further destination under the rates, rules and regulations provided herein.

"(b) Fabrication in transit privileges authorized in Section No. 3 of this tariff are hereby defined as the stopping in transit of Iron or Steel Rails (Railway Track) in carloads, at fabricating points shown in Section No. 3 for the purpose of straightening, sawing or redrilling ends under process, not requiring heating, melting or rerolling at such fabricating points and the forwarding of the fabricated product from the fabricating points, in carloads, to a subsequent and further destination under the rates, rules and regulations provided herein.

"Exception No. 1—Threading on rethreading in transit of Iron or Steel Pipe or Tubular Iron or Tubular Steel will not be permitted under the provisions of this tariff at Memphis, Tenn.

"(2) Applicable only in connection with privileges authorized at Memphis, Tenn."

The point in controversy is whether the threading done by defendant and which he said is incidental to flanging and only a part of the general fabrication operation, deprives him of the privilege of the lower rate under the Tariff 3912–E.

■ The provision in question very plainly forbids threading of iron or steel pipe under the terms of the exception. These matters are under regulation by the Interstate Commerce Commission, and a transit privilege such as this one is available to those who meet the conditions of same. It has been considered a special privilege. the conditions of which must be met by he who seeks its benefits. Baltimore & O. R. Co. v. U. S., D.C., 24 F.Supp. 734; Great Northern Ry. Co. v. Commodity Credit Corp., D.C., 77 F.Supp. 780; Carson Lumber Co. v. St. Louis & S. F. Ry. Co., 8 Cir., 209 F. 191; Smith & Scott, Inc. v. Atchison T. & Santa Fe Ry. Co., 192 I.C.C. 593.

Defendant insists that a reasonable construction of the tariff would indicate that the threading must be a main or primary purpose of the stopover at Memphis in order to deprive him of the provisions of the tariff in question. But he himself testified that without cutting and threading they would not have any use for the assembly plant. Also that most of the joining of pipes above four inches was done by flanges which were screwed onto the end of the pipe, and of course both ends to be joined needed to have threads. He stated that most of the pipe came in 21 foot lengths which was cut usually into the usual length of seven feet 10½ inches at the Memphis plant, and wherever a pipe was cut it had

to be there threaded to accommodate a flange. That the 21 foot lengths were cut to meet the specifications of the particular job. That although the 21 foot lengths of pipe might be threaded at their two ends they required new threading wherever cut and that the standard spacing between sprinkler heads is eight feet.

It is clear that threading is an important and essential part of the fabricating operation of the defendant at Memphis. The defendant therefore did not meet the qualifications set out in this tariff 3912–E and was not entitled to the special privilege rate thereunder.

Defendant contends that the tariff is ambiguous because it permits flanging but excepts threading and threading is only an incident to flanging. Flanging is the joining together of two pieces of pipe by a flange; in order to affix the two lips or ends of the flange the pipe must be threaded. This is a separate operation specifically excepted and forbidden by the tariff granting the special stopover privilege. Had the pipe arrived at Memphis equipped for flanging then there could be no objection, but the tariff provides only for the flanging itself, not preparing the materials. We do not find any ambiguity in the provisions of the tariff here in dispute. Read as a whole it is clear that he who threads pipe at Memphis brings himself squarely under the provisions of the exception. Tariff 3912–E permits shippers to stop their shipments at Memphis for the purpose of further fabricating them; item 105 defines fabrication and specifically excludes threading therefrom, and no ambiguity exists, and no strained or violent construction of said tariff is in anywise necessary. Christensen v. Northern Pac. Ry. Co., 8 Cir., 184 F.2d 534.

We hold, therefore, that the defendant was not entitled to the lower rate under the tariff and that plaintiff was entitled to recover the sum of $971.40 (which was stipulated to be the amount in controversy) from defendant.

Therefore, the decision of the trial court is reversed and rendered as indicated.