Alfab, Inc., has petitioned this Court for a writ of mandamus directing the Honorable Gary McAliley, Judge of the Coffee County Circuit Court, to set aside his order staying execution on Alfab's judgment against Raymond E. Murray, insofar as that judgment pertains to certain funds that were previously held in an escrow account under the supervision and control of Herbert A. Barr and that are now held in an account under the supervision and control of the circuit court clerk ("the escrowed funds"). The writ is denied.
The pertinent facts, which were adequately set out in Alfab's petition, are as follows:
 "On January 31, 1986, Alfab, Inc. (Alfab), an Alabama corporation domiciled in Enterprise, Alabama, purchased all the shares of Specialty Maintenance Construction, Inc. (SMCI), a Florida corporation domiciled in Lakeland, Florida, from its shareholders, Raymond E. Murray (Murray) (80% shareholder), Fred L. Solomon, Jr. (Solomon) (10% shareholder), and James G. Solomon (Solomon) (10% shareholder).
 "A portion of the purchase price ($249,203.00) was placed in escrow with Herbert A. Barr by oral agreement of the parties.
 "[A controversy] arose as to who should receive the escrow funds. Suit was filed in the Circuit Court of Coffee County in November 1986. The case was tried before [the] Honorable Riley P. Green, Circuit Judge, sitting without a jury, on Alfab's claims of: (1) declaratory judgment; (2) breach of contract; and (3) fraud; and on Murray's counterclaim for his portion of the funds.
 "[The Solomons] admitted [that the] assets [of SMCI] were overstated and on August 18, 1988, entered into a pro tanto settlement in which they relinquished their claims to [the] funds in escrow to Alfab.
 "On November 8, 1990, the court entered judgment in favor of Alfab and against Raymond E. Murray, awarding Alfab the funds in the hands of the escrow agent, together with an additional sum of $236,316, without punitive damages, together with costs and attorney fees as provided by the [contract of sale].
 "Murray filed [a motion for new trial] on December 5, 1990.
 "On December 19, 1990, after a hearing, the court denied Murray's [post-trial motion], awarded Herbert A. Barr, escrow agent, the sum of $5,932.20 for services and expenses, and awarded attorney fees and expenses of $23,750.00 and $1,850.94, respectively, to Pittman, Whitaker 
Pittman, attorneys for Alfab, and ordered [that] these sums be paid from [the] funds in escrow.
 "On January 22, 1991, Murray filed [a notice of appeal] to [the Alabama Supreme Court].
 "On February 1, 1991, Jim Ellis, circuit clerk, upon the application of Alfab, issued an execution pursuant to the court's judgments of November 8 and December 19, 1990. The execution was placed in the hands of the Sheriff of Coffee County.
 "On February 4, 1991, the sheriff levied on the escrow funds, took them into possession and delivered the same to the circuit clerk on the same day. On February 5, 1991, the clerk deposited the funds to his regular account.
 "On February 6, 1991, Murray filed [a motion for stay pending appeal].
 "On February 6, 1991, Herbert A. Barr filed [a] petition for [an] order relieving [him] of all duties, responsibilities, and obligations.
 "On February 22, 1991, [the] Honorable Gary L. McAliley entered an order [relieving Barr of his duties as the escrow agent].
 "On March 1, 1991, [the] Honorable Gary L. McAliley . . . entered an order granting [Murray's motion for a stay pending appeal] on condition that Murray execute bond with good and sufficient *Page 891 
sureties, approved by the clerk of the court, payable to Alfab in the amount of $10,000.00. The court further held: 'Upon the execution and approval of said bond, all further efforts by any party to execute against the escrow funds held by the clerk shall be stayed pending rendition of judgment in this cause by the Supreme Court of Alabama.' The order further provided, 'The clerk is directed to deposit the escrow funds in an interest-bearing account pursuant to Rule 67 of the Alabama Rules of Civil Procedure pending further orders of the court.' "
The sole issue before this Court is whether Alfab is entitled to immediate possession of the escrowed funds, or, stated another way, whether the trial court had the authority to stay execution on the escrowed funds pending Murray's appeal.
It is well established that mandamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Ex parteLoeb Co., 349 So.2d 9 (Ala. 1977).
Alfab contends that the trial court had no authority to stay execution on the escrowed funds because at the time the order staying execution was entered those funds had been transferred to the circuit court clerk pursuant to a writ of execution. Alfab further contends that the order staying execution on the escrowed funds was invalid because, it says, Murray failed to post an adequate bond under Rule 8(a), A.R.App.P. Alfab also asserts that the trial court's order prohibited it from receiving that portion of the escrowed funds that was the subject of the settlement agreement between it and the Solomons, and that the trial court had no authority to freeze those funds.
At common law, the execution on a judgment had to be superseded prior to the levy under a writ of execution or else the execution on the judgment could continue.[1] This rule was based on the theory that the judgment was fully executed from the time of the levy. However, although the execution on the judgment was allowed to continue when it was not superseded prior to the levy under a writ of execution (e.g., the sale of goods was permitted when the goods were seized under a writ of execution prior to the issuance of a writ of supersedeas), a writ of supersedeas issued after the levy, but prior to satisfaction of the judgment, stayed the disbursement of any proceeds generated by the execution. See 4 Am.Jur.2d Appeal andError § 372 (1962); 4A C.J.S. Appeal and Error § 667 (1957);United States v. Dashiel, 70 U.S. (3 Wall.) 688, 18 L.Ed. 268
(1865); Meriton v. Stevens, Willes 271, 125 Eng.Rep. 1168 (1741). The common law rule appears to have been widely abrogated by statute, at least partially, and the rule now in effect in most jurisdictions is that a proper supersedeas becomes effective notwithstanding a levy, and stays any further proceedings under the writ of execution. 4 Am.Jur.2d, supra, § 372; 4A C.J.S., supra, § 667:
 "At common law a supersedeas does not destroy the lien effected by the previous levy of an execution or effect a stay of further proceedings thereon; but, under the statutes providing for the allowance and the perfecting of a supersedeas on the execution of a prescribed bond, the common-law rule and the theory that the levy and sale under an execution are indivisible and that the execution must be regarded as fully executed from the time of the levy are changed, and the *Page 892 
general rule now is that a supersedeas becomes effective notwithstanding a levy, and stays further proceedings thereunder, or the court, either trial or appellate, may, in its discretion, make an order recalling or staying proceedings under the execution until the determination of the appeal or writ of error."
In Alabama, Rule 62(d), Ala.R.Civ.P., provides:
 "Stay Upon Appeal. When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court."
(Emphasis added.) In Osborn v. Riley, 331 So.2d 268, 274
(Ala. 1976), this Court, quoting Fidelity Deposit Co. v.Torian, 221 Ala. 131, 133, 127 So. 829, 831 (1930), stated that "[t]he purpose of a supersedeas bond is 'to keep the parties in status quo pending the appeal.' " The Court went on to note that the preemptive effect of a supersedeas bond on the right to execute on a judgment " 'reach[es] not only to possession of the property, but [to] every other consequence of the judgment.' " See, also, North Birmingham Trust Savings Bankv. Hearn, 211 Ala. 18, 99 So. 175 (1924).
Under the foregoing authorities, we hold that the trial court in the present case had the authority under Rule 62(d), upon the filing of a supersedeas bond in sufficient form and amount, to stay the execution on the escrowed funds and to maintain the status quo between Alfab and Murray by requiring the circuit court clerk to keep those funds in an interest-bearing account for the protection of the parties pending Murray's appeal to this Court.
Furthermore, we have carefully examined the supersedeas bond posted by Murray and we cannot agree with Alfab's contention that the bond is inadequate. Specifically, Alfab makes the following argument:
 "[The supersedeas] bond filed by Murray does not comply with the requirements of Rule 8(a), A.R.A.P., nor to the approved form of a supersedeas bond as set forth in the appendix of Alabama Rules of Court. The letter of credit attached to the bond is not [an] irrevocable letter of credit. The condition set forth in the letter of credit precludes any liability [from] being imposed on SouthTrust Bank as surety to satisfy such judgment, penalties, costs, including costs of appeal, as may be rendered in this case. This is especially critical in this case since there is a provision for the payment of attorney fees in favor of the prevailing party.
 "There is no provision in the supersedeas bond to enable the court to enter judgment against SouthTrust as an obligor on the bond.
 "Sections 12-22-72, -73, -75, Code of Alabama are rendered ineffective since no surety appears on the supersedeas bond approved in this case."
The bond, however, is sufficient in form and Murray's obligation thereunder, contrary to Alfab's contention, is secured by an irrevocable letter of credit from SouthTrust Bank of Tampa, Florida, in the amount of $10,000. Because the funds sought by Alfab will be maintained by the circuit court clerk in an interest-bearing account pending Murray's appeal, we can find no abuse of discretion on the trial court's part in setting the bond at $10,000 pursuant to Rule 8(a)(3).[2] Alfab's assertion *Page 893 
that $10,000 is an insufficient amount to fully protect it is not supported by the record.
Furthermore, from our review of the record, we are uncertain as to whether the trial court actually intended to deny Alfab access to any funds that were the subject of the settlement agreement between Alfab and the Solomons. The settlement agreement provides, in pertinent part, as follows:
 "[The Solomons] hereby [agree] to relinquish all claims [that they] have, either individually, collectively, or otherwise, to the escrow monies which form a portion of the subject matter of the above-referenced lawsuit and [the Solomons] hereby [direct, consent to, and request,] that the court determine any interest they might have in said escrow funds . . . to be the property of Alfab."
Alfab filed a motion asking the trial court to reconsider its order staying execution on the escrowed funds and, for all that appears in the record, argued for the first time in that motion that, even upon the filing of a proper supersedeas bond by Murray, the trial court had no authority to deny it access to any funds that were the subject of the settlement agreement between it and the Solomons. The trial court had not ruled on that motion at the time this petition was filed. We cannot issue a writ of mandamus in the absence of a clear showing that the trial court denied Alfab access to funds as to which it is entitled to immediate possession.
In conclusion, we note Alfab's contention that the stay should be lifted to enable the former escrow agent, Barr, and Alfab's attorneys, the firm of Pittman, Whitaker Pittman, to be reimbursed for their respective expenses and compensated for their services rendered, from the escrowed funds. We point out, however, that neither Barr nor Alfab's attorneys are parties before this Court; therefore, we cannot issue a writ of mandamus with respect to any claims that they may have to immediate possession of a portion of the escrowed funds.
Having found no support in the record for Alfab's contention that it is entitled to the relief sought in its petition, we must deny the writ.
WRIT DENIED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] A levy under a writ of execution is defined in 30 Am.Jur.2dExecutions § 221 (1967) as follows:
 "Generally, it may be stated that a levy under a writ of execution to enforce a judgment for money is an act of dominion over specific property by an authorized officer of the court which, but for the writ under which he proceeds, would be a trespass, conversion, or other unlawful invasion of a property right, and which results in the creation of a legal right to subject the debtor's interest in the property to the satisfaction of the debt of his judgment creditor, to the exclusion of others whose rights are inferior. Hence, the levy of execution is an absolute appropriation in law of the property levied upon to the payment of the judgment debt."
[2] Rule 8 provides, in pertinent part, as follows:
 "(a) Stay by supersedeas bond. The appellant shall not be entitled to a stay of execution of the judgment pending appeal (except as provided in ARCP Rule 62(e)) unless he executes bond with good and sufficient sureties, approved by the clerk of the trial court, payable to the appellee (or to the clerk or register if the trial court so directs), with condition, failing the appeal, to satisfy such judgment as the appellate court may render, when the judgment is:
". . . .
 "(3) Only for the performance of some act or duty, or for the recovery or sale of property or the possession thereof (or if the judgment includes the payment of money and appellant does not wish to supersede the judgment in that respect), in such sum as the trial court may in writing prescribe."
The judgment from which Murray appealed, insofar as it pertained to the escrowed funds, was for the recovery of personal property within the meaning of Rule 8(a)(3), and the trial court properly treated it as such.