SNOW et al. v. HAZLEWOOD et al.

MASTERSON et al. v. SNOW et al.

(Circuit Court of Appeals, Fifth Circuit. May 16, 1910.)

Nos. 2,018, 2,030.

1. APPEAL AND ERROR (§ 162*)—WAIVER OF RIGHT OF APPEAL—ACCEPTANCE OF BENEFITS OF DECREE.

The withdrawal by a complainant from the registry of the court of sums on deposit therein awarded her by the decree does not bar her right of appeal from other portions of the decree.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 984–991; Dec. Dig. § 162.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. JOINT-STOCK COMPANIES (§ 15*)—LIABILITY AS PARTNERS TO THIRD PER-
SONS.

Where a private association of persons having negotiable shares, which
were transferred from time to time, purchased property as a partner-
ship, on a cancellation of the deed to such property for fraud, and the
direction of an accounting to the grantor for the proceeds of portions of
the property sold, all members of the association at the times of such
sales are liable as partners.

[Ed. Note.—For other cases, see Joint-Stock Companies, Dec. Dig. §
15.*]

3. BROKERS (§ 65*)—TRUSTS (§ 170*)—DEED VOIDABLE FOR FRAUD—ACCOUNT-
ING BY GRANTEES AS TRUSTEES DE SON TORT.

One who made a fraudulent sale of his principal's property as agent,
under a power of attorney which entitled him to a share of the proceeds,
and who has a secret interest in the purchase, on the cancellation of the
deed and direction of an accounting by the purchasers for the proceeds
of portions resold by them, cannot take anything under the provisions
of the power of attorney, nor are any of the purchasers so ordered to ac-
count entitled to compensation for services rendered in making such re-
sales; their accounting being substantially, if not in terms, as trustees
de son tort.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 48–50; Dec.
Dig. § 65;* Trusts, Cent. Dig. § 225; Dec. Dig. § 170.*]

4. APPEAL AND ERROR (§ 1194*)—EFFECT OF DECISION—QUESTIONS DETER-
MINED.

Where a deed was canceled for fraud by decree entered on a mandate
of the Circuit Court of Appeals, which also directed an accounting by
the defendants with respect to the property conveyed, each of defend-
ants was precluded by such adjudication from claiming on the account-
ing that he was an innocent purchaser for value.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4648–
4660; Dec. Dig. § 1194.*]

Appeal and Cross-Appeal from the Circuit Court of the United
States for the Eastern District of Texas.

Suit in equity by Annie E. Snow and others against R. R. Hazle-
wood and others. Decree for complainants, and all parties appeal.
Reversed, and new decree directed.

See, also, 157 Fed. 898, 86 C. C. A. 226.

In No. 2,018:

W. D. Gordon, for appellants.

Horace Chilton and John Charles Harris, for appellees.

In No. 2,030:

John Charles Harris, John C. Matthews, J. A. L. Wolfe, Horace
Chilton, and Presley K. Ewing, for appellants.

W. D. Gordon, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. A motion is made to dismiss the appeal
in No. 2,018. The appellant, not satisfied with the relief granted
in the Circuit Court, sued out this appeal, contesting certain
credits allowed the appellees, and asking enlarged relief. Among
other things the decree below contained the following:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"It is further ordered, adjudged, and decreed that said complainants are authorized to withdraw from the registry of the court said sum of ten thousand dollars ($10,000.00) deposited by them as aforesaid by way of tender. It is further ordered, adjudged, and decreed that said complainants are entitled to the sum of $2,812.50 out of the $3,750, which was paid into the registry of this court by the receivers of the Lone Star & Crescent Oil Company on the 23d day of January, 1905, and said complainants are authorized to withdraw said amount, to wit, $2,812.50."

Prior to the suing out of this appeal the appellants withdrew said sums from the registry of the court, and such withdrawal is the basis of the motion to dismiss.

We have carefully examined the authorities cited by appellees in support of their motion to dismiss and by the appellants contra. In United States v. Dashiel, 3 Wall. 688, 702, 18 L. Ed. 268, the Supreme Court said:

"Partial satisfaction of a judgment, whether obtained by a levy or voluntary payment, is not, and never was, a bar to a writ of error, where it appeared that the levy was made or the payment was received prior to the service of the writ, and there is no well-considered case which affords the slightest support to any such proposition. Subsequent payment, unless in full, would have no greater effect; but it is unnecessary to examine that point, as no such question is presented for decision. Where the alleged satisfaction is not in full, and was obtained prior to the allowance of the writ of error, the authorities are unanimous that it does not impair the right of the plaintiff to prosecute the writ, and it is only necessary to refer to a standard writer upon the subject to show that the rule as here stated has prevailed in the parent country from a very early period in the history of her jurisprudence to the present time."

This case was cited with approval and followed in Embrey v. Palmer, 107 U. S. 8, 2 Sup. Ct. 25, 27 L. Ed. 346, and Embrey v. Palmer was cited and followed in Reynes v. Dumont, 130 U. S. 394, 9 Sup. Ct. 486, 32 L. Ed. 934, and we think that these cases should control in the disposition of this motion, particularly as, from our examination of the record, we conclude that the items alleged to have been withdrawn from the registry of the court are not involved in the appeal.

The motion to dismiss is therefore denied.

When this case was before this court at a former term (157 Fed. 898, 86 C. C. A. 226) we held, and so instructed the Circuit Court, that:

"The decree of the Circuit Court should be reversed, and the complainants given relief canceling the deed to Casey of November, 1901, the power of attorney to Hazelwood, of date November 25, 1901, and the deed executed thereunder June 18, 1902, to Campbell and Swayne, trustees, and recorded in Jefferson county, Texas, vol. 65, pp. 62–64, except so far as the rights of innocent purchasers are concerned, and ordering an accounting of all sales and releases and settlements made by the defendants based on complainants' rights in the Veatch survey, and, on such accounting, that the complainants should have such relief against the several defendants as equity and good conscience may require—all conditioned upon the complainants' paying into court for the benefit of the Hogg-Swayne Syndicate the $10,000 as tendered in the twenty-fourth paragraph of the bill."

It is to be noticed that this covers the setting aside and canceling of certain deeds and a power of attorney, and also an accounting of all sales, releases, and settlements made by the defendants (who were

R. R. Hazlewood and the Hogg-Swayne Syndicate), based on Mrs. Snow's rights in the John A. Veatch survey. As to the cancellation, the rights of innocent third persons were to be protected; but there was no suggestion that the defendants named were, or in any sense could be, innocent third purchasers. After the mandate was filed in the Circuit Court, the court entered a decree in pursuance thereof, setting aside and canceling the deeds and the power of attorney in question, and ordering an accounting as to the defendants. The decree contained specific instructions to the master to find as to several matters extraneous of the record and not within the scope of a proper accounting between the complainants and defendants, and only concerning the rights of the defendants between themselves, and as to the good faith and expenses of all the defendants.

After hearing evidence and counsel, the special master reported, following the lines of the decree of reference. His report is very lengthy; but, as we view the case, it is not necessary to recite it. On the report coming in, the complainants below promptly filed specific and detailed exceptions, and thereafter H. Masterson, one of the members of the Hogg-Swayne Syndicate, and Sarah J. Campbell, individually, for herself and as widow in community of her deceased husband, W. T. Campbell, filed exceptions. Defendant R. R. Hazlewood also filed exceptions to the master's report, and still later the said Hazlewood filed amended objections and exceptions to the same.

The court, on hearing, rendered a final decree, in which he overruled all exceptions to the master's report and confirmed the same, except as to the amounts received respectively by the Hogg-Swayne Syndicate and R. R. Hazlewood, and except as to the settlement of the Snow claim with the Guffey Petroleum Company, and then the court decreed, on the report of the master and the evidence in the case, as to the amounts the complainants were to recover, and specifically as to the rights and liabilities of several of the defendants. From the final decree all parties have appealed, either separately or collectively.

Defendant Masterson, who bought into and became a member of the Hogg-Swayne Syndicate after the making, but prior to the delivery, of the deed of November 6, 1901, to the Hogg-Swayne Syndicate, appeals separately, and claims that he is an innocent purchaser as to Mrs. Snow's claim, and although as a member of the Syndicate he drew his share of the dividends of the Hogg-Swayne Syndicate, including amounts received from the Snow interest, he should be held to a different accounting than the other members of the Syndicate. The Hogg-Swayne Syndicate was a private association, whose members had negotiable shares and interests, varying as trades and purchases of respective interests took place; but as a partnership it bought and sold the Snow title, and all the members thereof, defendants herein, are liable as partners for the proceeds of the Snow interest coming to the hands of the Syndicate.

The defendant R. R. Hazlewood, acting under a power of attorney to Hazlewood, Gordon & Beatty, was the principal agent in obtaining the sale and transfer of Mrs. Snow's rights in the John A. Veatch survey in the Hogg-Swayne Syndicate, and it was his collu-

sion with Campbell, one of the members, and agent, of the Syndicate which made the sale and transfer fraudulent in law, if not in fact; and certainly Hazlewood can take nothing, either under the provision for a share to the attorneys in the power of attorney from Mrs. Snow or for services rendered in making sales and settlements, but he, like and with the members of the Syndicate, is liable and has to account "for all receipts from sales, releases, and settlements of the Snow interest in the John A. Veatch survey."

Defendant E. J. Marshall, who joins with his codefendants in the appeal, separately assigns error to the effect that as to his liability he should be held to be an innocent purchaser, and thus be relieved of the whole, or at least a part, of his liability to account to complainant Snow.

The errors assigned by the defendants jointly either relate to matters of jurisdiction or liability to account, all necessarily settled by our former decision, or else relate to the same matters assigned by the complainants on their appeal and to be hereafter considered.

When the deed of Mrs. Snow to Casey, trustee for the Hogg-Swayne Syndicate, was adjudged to be fraudulent and void, and an accounting was ordered against all the defendants "of all sales, releases, and settlements based on Mrs. Snow's interest in the John A. Veatch survey," it was in effect holding all the defendants liable as constructive trustees, and necessarily eliminated all question of any one of them being an innocent purchaser for value; and if thereby said defendants were not in terms adjudged trustees de son tort, the responsibility to account is substantially the same. These conclusions dispose of all the material questions raised in the assignments of error, except those relating to the accounting, as to which all appellants complain.

The complainants contend that both the master and the court below erred in not taking as a basis for accounting the amounts charged in paragraph 21 of the original bill as received by the Hogg-Swayne Syndicate for the release of the Snow interest. It is claimed that the defendants, in their answers to the bill, admitted the receipts as charged, and that in our former decision the amount was practically adjudicated. The record shows that, as to the amounts charged as received in paragraph 21 of the complainants' bill, the defendants Campbell, Swayne, Marshall, Casey, and Harris Masterson made the following admission:

"And these defendants further say that since the execution of said deed by the complainants, by their attorneys, the claim of Annie E. Snow has, as alleged in said bill, been compromised and settled on and as to the tracts mentioned in paragraph 21 of said bill, and for the amount specified in said paragraph, except as to the Hogg-Swayne 15 acres, being the 15 acres owned by the Hogg-Swayne Syndicate, and as to this the defendants allege no such compromises or settlements were made, except as hereinbefore stated; that, as to the other amounts mentioned in said paragraph, one-half of the purchase or compromise price therein mentioned was paid to the said Hogg-Swayne Syndicate, one-sixth to the said Hazlewood, one-sixth to the said Gordon, and one-sixth to E. C. McLean, the solicitor for complainants herein, who had, prior to such payment, acquired the interest of said Beatty in said Snow claim; and, of the notes executed in part payment of said compromise and settlement mentioned in said paragraph 21, notes for one-half of the full

amount of all said notes were executed to or for the benefit of the Hogg-Swayne Syndicate, one-sixth thereof to said Hazlewood, one-sixth to said Gordon, and one-sixth to the said McLean; and these defendants now hold the notes of said Higgins Oil & Fuel Company for $7,500, paid by it on account of said Snow claim, and have never held any other notes of said company given on account of said claim, and for the balance of the sum of $15,000 for which notes were executed by said Higgins Oil & Fuel Company, the said Hazlewood, Gordon, and McLean each received, and now hold, notes for $2,500, payable to them respectively."

The defendant Hogg admitted as follows:

"Since the execution of said deed by complainants the claim of Annie E. Snow has, as alleged in said bill, been compromised and settled as to the tracts mentioned in paragraph 21 of said bill, and for the amount specified in said paragraph, except as to the Hogg-Swayne Syndicate 15 acres—that is, the 15 acres owned by the Hogg-Swayne Syndicate—and as to this defendant alleges no such compromise or settlements were made, except as hereinbefore stated."

The defendant Fisher, answering paragraph 21 of complainants' bill, says:

"That he is informed and believes, and so states, that none of the said money, notes, accounts, or credits mentioned in paragraph 21 of complainants' bill were received from the sale of any of said land prior to the time when he made his last sale to Harris Masterson, and if any such sales to other parties were made, and money, notes, accounts, and credits received by any person, it was after this defendant had fully parted with and lost all control of any interest in the said land; and he states and avers that he has never received, converted, or appropriated to his use any of said moneys, notes, accounts, or credits, and has no interest therein, and never had, as herein stated."

The defendant Hazlewood did not answer that part of paragraph 21 of complainants' bill now in question. In our former opinion we did not go into the question of admitted receipts by the defendants, but ordered an accounting against all the defendants for "all sales, releases, and settlements based on complainants' rights in the John A. Veatch survey." The decree of the Circuit Court directing a reference was specific in regard to the account, first, against the members of the Hogg-Swayne Syndicate; second, against R. R. Hazlewood, as to what each received and each was entitled to for services, costs, and expenses, etc., and therefore the master was constrained to rule and did rule against the complainants, leaving to the court to settle the matter.

The master reported as to the sums received by the Hogg-Swayne Syndicate a total of $15,053.50. Under the reference, with regard to the expenses for services to be allowed the Hogg-Swayne Syndicate, the master found the sum of $2,589.38, to wit: For costs advanced at the time of sale, $214.38; attorney's and surveyors' fees, $125; and amount paid J. O. Davis in the Guffey settlement, $2,250. The complainants excepted to this finding, and we think the exception well taken as to the amount paid J. O. Davis in the Guffey settlement and the attorney's and surveyors' fees, as the master reports no facts and we find no evidence warranting said allowances. The amount of $214.38 seems to have been for costs paid in the Snow suit, in which a receiver was appointed, and is a proper credit.

The master also found on the evidence, aided with the opinion of witnesses, that the services of the members of the Syndicate for time, management, and labor in making settlements and compromises increased the value of the results obtained from settlements to the extent of $15,000, and recommended an allowance of that amount. The court below sustained this finding of the master. The complainants assign error thereon.

It seems that the Hogg-Swayne Syndicate was carrying on a general speculating business in oil lands and rights, and dealing with other properties and interests, as well as with the Snow interest, after they took charge of the same; but the evidence does not show any facts or anything beyond opinion that the Syndicate rendered any service for which they are entitled to compensation in this case. The members of the Hogg-Swayne Syndicate were accounting as trustees for Mrs. Snow under a fraudulent conveyance, and, as said supra, "if they were not in terms adjudged trustees de son tort, the responsibility to account is substantially the same," and in such cases advantageous services, and even money expended, are not necessarily allowed. In this particular finding the result leaves a credit to the Syndicate.

The complainants' fifth assignment of error is well taken. As to Hazlewood, the master reported a total sum of receipts from the Snow interest of $12,553.50. The master found and the court below allowed Hazlewood $214.38 costs paid at the time of sale. We understand these were costs paid in the litigation instituted to protect Mrs. Snow's claim, in which a receiver was appointed, and the amount was properly allowed.

The master denied all other claims of Hazlewood for services and moneys expended in regard to the Snow interest, both before and after the sale of the Snow interest to the Hogg-Swayne Syndicate. This ruling is not attacked in any of the cross-appellants' assignments of error. Paragraph 21 of complainants' bill charges:

"That since the execution of said deed by complainants, the claim of said Annie E. Snow has been compromised and settled on about 65 acres out of said 300 acres of oil-producing land on said survey for an aggregate sum of $76,839, distributed as follows:

| | | |
|---|---|---:|
| Settlement on Hogg-Swayne 15 acres | | $20,000 00 |
| " | " Yellow Pine 1 acre | 1,000 00 |
| " | " Producers' Oil Co | 500 00 |
| " | " San Jacinto Oil Co | 500 00 |
| " | " Columbia Oil Co | 300 00 |
| " | " Keith Ward Oil Co | 6,000 00 |
| " | " Higgins Oil & Fuel Co. 27 acres | 30,000 00 |
| " | " Lone Star & Crescent Oil Co | 11,250 00 |
| " | " Gober Oil Co | 300 00 |
| " | " National Oil & P. L. Co. 10 acres | 6,000 00 |
| " | " A. R. Hare | 300 00 |
| " | " Southern Pacific agent | 300 00 |
| " | " Howeth & Brock, agents | 189 00 |
| Total | | $76,639 00" |

As shown above, the answers of the defendants, except Hogg and Hazlewood, admit this claim. The facts as shown by the evidence are that the charge is correct, except as to the settlement of the Hogg-

Swayne 15 acres, which was for $6,000, instead of $20,000, and there-fore the above total should be reduced to $62,839.

The Lone Star & Crescent Oil Company settled for the sum of $11,250, one half of which was paid in cash and the other half pend-ing this suit put into the registry of the court. If we deduct one-half of the above-mentioned sum of $11,250 from the total receipts above given, it leaves the sum of $57,214, one-half of which ($28,607) went to the Hogg-Swayne Syndicate and R. R. Hazlewood as owners of an undivided half of the Snow interest. Pending the suit a settlement releasing the Snow interest so far as the Syndicate and Hazlewood were concerned was made with the Guffey Petroleum Company on the basis of $50,000, of which $5,000 in cash was paid and a note given for $28,333, leaving the attorneys, Gordon and McLean, to be settled with for the two-sixths interest claimed by them. The note has since been paid into the hands of a trustee, and the proceeds await the dis-position of this case. Of the $5,000 paid, the Hogg-Swayne Syndicate received $3,750 and Hazlewood received $1,250, presumably for his attorney's interest.

To the above sum of $28,607 should therefore be added the $3,750 received from the Guffey Company, making a total of $32,357, for which sum the members of the Hogg-Swayne Syndicate and Hazle-wood should be held liable to complainants, subject, however, to a credit of $10,000, the amount paid to Mrs. Snow for the one undivided half interest in her claim in the Veatch survey, and also to a credit of $429.79 costs paid. Of the above-mentioned receipts, $28,607 went to and was received by Hazlewood, Gordon & Beatty as the attorneys under a power of attorney given to them by Mrs. Snow, and for one-third of such sum, to wit, $9,535.66, Hazlewood, on account of his collusion with the Hogg-Swayne Syndicate in the sale of the Snow interest in the Veatch survey, should be held as trustee for the com-plainants and liable to them for the same. To this sum so held as trustee should be added the sum of $1,250, received in the settlement with the Guffey Petroleum Company.

A release of the Snow interest was given the Keith Ward Company in exchange for one-sixteenth acre of land. The Syndicate sold its interest to Hazlewood for $1,500 cash, but nothing further was rea-lized. For this $1,500 the Syndicate—but not Hazlewood—should ac-count to complainants.

These conclusions leave the members of the Hogg-Swayne Syndi-cate and Hazlewood liable for $21,829.21, and Hazlewood additionally liable for $10,785.66, and the Syndicate additionally liable for $1,500. Legal interest should be allowed on these liabilities. To avoid a re-commitment, and because the receipts ranged from December 4, 1901, to May 20, 1905, the bulk being prior to the filing of complainants' bill, up to which time the sale complained of by Mrs. Snow was sub-ject to ratification, we fix the date from which interest should run at April 6, 1903. We allow no interest on the $10,000 paid into court by Mrs. Snow, because it was tendered in the bill and is herein allowed as a credit or offset of the date of filing the bill.

Our conclusion on the whole case is that the decree of the Circuit

Court should be reversed, and the cause remanded, with instructions to enter a decree as follows:

"This cause coming on to be heard, and this court being fully advised, it is ordered, adjudged, and decreed that the former decree of this court be vacated and annulled, and in lieu thereof it is now adjudged and decreed that the deed from said Annie E. Snow and her husband, G. H. Snow, to R. R. Hazlewood, dated November 25, 1901, and said deed in question herein made under said power of attorney by said R. R. Hazlewood to W. T. Campbell and Jas. W. Swayne, trustees, dated June 18, 1902, and recorded in the Deed Records of Jefferson county, Texas, in volume 65, pages 62–64, be and the same are hereby declared canceled, annulled, rescinded, and held to be utterly void and of no effect, except so far as the rights of innocent purchasers are concerned; but it is expressly adjudged that this decree of cancellation does not apply to the 15 acres of land conveyed by said R. R. Hazlewood as attorney in fact for complainants to Jas. W. Swayne, trustee, for the use and benefit of the Hogg-Swayne Syndicate on or about December 4, 1901, nor to that part of the complainants' interest in the Veatch survey conveyed by the deed from Harris Masterson to Frank Andrews on August 21, 1903, recorded in the Deed Records of Jefferson county, Texas, in volume 75, page 456, the said conveyance being the release of the Snow interest under what is known as the J. M. Guffey Petroleum Company settlement, the said settlement, though made by defendants since the institution of this suit, having been ratified by complainants and judgment asked for the proceeds thereof.

"And it is further ordered, adjudged, and decreed that the said R. R. Hazlewood, Jas. W. Swayne, R. E. Brooks, E. J. Marshall, W. F. Casey, A. S. Fisher, Sarah J. Campbell, as survivor in community of the estate of W. T. Campbell, deceased, Will C. Hogg and Ima Hogg, as independent executors of the estate of Jas. S. Hogg, deceased, and Harris Masterson, be and they are hereby held liable to complainants for the amounts received on sales, releases, and settlements made by the aforesaid defendants based on the complainants' right in the Veatch survey, and for such liability condemned to pay the complainants the sum of $21,827.21, with interest at 6 per cent. from April 6, 1903. And it is further adjudged and decreed that James W. Swayne, R. E. Brooks, E. J. Marshall, W. T. Casey, A. S. Fisher, Sarah J. Campbell, as survivor in community of the estate of W. T. Campbell, deceased, Will C. Hogg and Ima Hogg, as independent executors of the estate of Jas. S. Hogg, deceased, and Harris Masterson, be and they are condemned to pay the further sum of $1,500, with interest at 6 per cent. per annum from April 6, 1903.

"It is further adjudged and decreed that R. R. Hazlewood, for his liability to further account to the complainants, be condemned to further pay to them the sum of $10,785.66, with interest thereon at 6 per cent. per annum from April 6, 1903.

"It is further ordered, adjudged, and decreed that the said complainants are entitled to the note and the proceeds thereof executed by Frank Andrews to Harris Masterson on the 21st day of August, 1903, for $28,333.33, the amount of said note being part of the settlement made by Harris Masterson, acting for the Hogg-Swayne Syndicate, with the J. M. Guffey Petroleum Company; said settlement having been ratified by said complainants in the proceedings heretofore had in this case.

"Complainants in open court having shown that Rod Oliver, one of the original defendants is dead, and his estate is insolvent, and moved that the case be dismissed as to him, it is hereby decreed that as to the said Rod Oliver this case be dismissed.

"It is further adjudged and decreed that the decree in this case and the findings therein, whether by the special master or the court, shall be without prejudice to any of the defendants in any future contest between them, or any of them, concerning any equities or legal rights as between themselves, or any of them, for exoneration, contribution, or accounting or in any other respect.

"It is further ordered and decreed that the special master, John Broughton, be allowed the sum of $750 for his services in this case; that the fees

of the stenographers, amounting to $302.61, be also allowed; and that these items shall be taxed as against the defendants as a part of the costs recoverable herein.

"It is further ordered and decreed that the complainants recover of the above-named defendants all costs of this court, including the allowances to the master, etc., for which and all other sums decreed in this case execution may issue as in cases at law."

In the foregoing instructed decree no mention is made of the $10,000 deposited by Mr. and Mrs. Snow in the registry, nor of the deposit by the receivers of the Lone Star & Crescent Oil Company, because the record shows that such deposits have been drawn out by the complainants below and the same sanctioned by the Circuit Court.

The costs of appeal, including cost of transcripts, to be paid by all the appellees in No. 2,018, and by the appellants in No. 2,030.

Reversed.