## THE C. S. HOLMES.*

(Circuit Court of Appeals, Ninth Circuit. November 13, 1916.)

No. 2698.

1. ADMIRALTY ☜104—RIGHT OF APPEAL—ACCEPTANCE OF BENEFITS—SEVERABLE DECREE.

Where a decree in admiralty covered separate causes of action, some of which were determined in favor of libelant and some against him, acceptance of payment of that portion of the decree in his favor does not bar his right of appeal from the portion against him.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 711; Dec. Dig. ☜104.]

2. SEAMEN ☜11—INJURY IN SERVICE—LIABILITY OF VESSEL FOR FAILURE TO PROCURE PROPER TREATMENT.

When the vessel on which libelant was a seaman was 10 miles from Cape Flattery, he received a compound fracture of his right arm; the injury being very serious. He requested to be taken to the marine hospital at Port Townsend, but instead the vessel proceeded to Port Angeles, arriving in the night, and the next morning libelant was left in care of a physician who was not a marine surgeon. Owing to unskillful setting, his injury was greatly aggravated before he was sent to the hospital seven days later. Port Townsend was but 20 miles farther on, and the master could have placed libelant in the hospital at as early an hour as he did in charge of the doctor. Held, that the master was negligent in failing to do so, and that the vessel was liable for the resulting injury.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 39–44, 187; Dec. Dig. ☜11.]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Suit in admiralty by Gust Fondahn against the schooner C. S. Holmes. Decree in part for respondent, and libelant appeals. Reversed

See, also, 209 Fed. 970; 212 Fed. 525.

At 6 o'clock in the afternoon of January 3, 1913, when the schooner C. S. Holmes was about 10 miles off Cape Flattery on her way to the sea, the appellant, a sailor on the schooner, received a compound fracture of his right arm. The injury was very serious, the periosteum was torn, and bones protruded from a ragged wound. The arm was dressed by the master and sailors, and the master put the vessel about and sailed back toward Port Angeles, and with the aid of a tug, which was procured on the way, arrived at Port Angeles at about 3 o'clock the next morning. Thereupon sail was lowered and all hands went to bed. Early in the morning the master inquired for a doctor and was referred to Dr. Taylor. The appellant was taken in charge by Dr. Taylor, and was taken to a hospital which the latter owned. About 8 o'clock that morning the appellant's arm was dressed. Seven days later the appellant went to the Port Townsend Marine Hospital. While in

charge of Dr. Taylor, the appellant's arm began to fester, and it later developed that the bones had not been in apposition and that they did not unite. At the Marine Hospital an operation was performed, and Lane plates were applied, but no cure was effected. The evidence was that a further operation would be necessary, and that a cure was doubtful, if not impossible.

It was the contention of the appellant that the master was negligent in taking him to a doctor at Port Angeles, and in not taking him to the doctor at the Marine Hospital at Port Townsend; that the master failed to make arrangements with Dr. Taylor for compensation, and for that reason the appellant did not receive the treatment which his case required; that he was compelled to pay Dr. Taylor the sum of $30 for treatment, which he contends was not proper, and by reason thereof his arm had been destroyed. It was the appellee's contention that the master's duty was to take the appellant to the nearest point where medical attention could be obtained, and that by so doing he discharged the vessel from further obligation.

The court below found upon the evidence that the master had fully performed his duty to the appellant when he selected a reasonably competent physician, and that the vessel was not responsible for the negligence, if there were negligence, of the physician who was employed.

Daniel Landon, of Seattle, Wash., for appellant.

R. A. Ballinger, Alfred Battle, R. A. Hulbert, and Bruce C. Shorts, all of Seattle, Wash., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellee moves that the appeal be dismissed, for the reason that the appellant accepted the benefits of the decree appealed from, and thereby waived his right to review any portion thereof. The libel presented four causes of action. The first was to recover damages for the injury which the appellant received by reason of the accident; the second was to recover damages for the failure of the appellee to furnish proper medical and surgical treatment; the third was to recover the sum of $30, which the appellant paid for medical treatment; and the fourth was to recover the sum of $45, claimed to be due him for wages. The decree denied the appellant recovery upon the first and second causes of action, but awarded him payment of the sums claimed in the third and fourth causes of action. The decree was rendered on October 4, 1915, and on the same day the appellant served upon the appellee the following notice:

"Take notice that the libelant above named hereby appeals to the United States Circuit Court of Appeals for the Ninth Circuit from the final decree, entered herein October 4, 1915."

Two days later the appellant filed his petition for allowance of his appeal, specifying that he appealed from the finding and decree that he take nothing by reason of the damages suffered by him, as set out in the second cause of action. Service of that petition was made upon the appellee on October 6, 1915, and the appeal was allowed on that day. By an affidavit it is shown, and it is not denied, that on December 21, 1915, the appellant acknowledged the receipt of the sum of $344.55 in full settlement, satisfaction, and discharge of the judgment rendered in his favor, including all costs in the District Court and on the former appeal to the Circuit Court of Appeals, as shown by

the cost bill filed, together with the principal judgment, amounting to $75.

In 3 Corpus Juris, p. 680, it is said that the general rule that a party who enforces or otherwise accepts the benefit of a judgment cannot afterward maintain an appeal does not apply "where the parts of the judgment or decree are separate and independent, and the receipt of a benefit from one part is not inconsistent with an appeal from another." That doctrine is sustained in Gilfillan v. McKee, 159 U. S. 303, 16 Sup. Ct. 6, 40 L. Ed. 161; Snow v. Hazlewood, 179 Fed. 182, 102 C. C. A. 448, and other cases. The judgment as to the second cause of action was clearly separate and independent of the other causes of action, and we hold that the receipt of the money adjudged to be due the appellant on the third and fourth causes is not inconsistent with his appeal. The motion to dismiss is denied.

[2] None of the evidence in the case was taken in open court, and this court has the same opportunity that the court below had to judge of the value of the testimony. We are unable to agree with the court below that the master of the Holmes was guilty of no negligence in his treatment of the appellant after the latter received the injury. We think it was the obvious duty of the master to take the appellant to the Marine Hospital at Port Townsend. That was the only Marine Hospital on Puget Sound. Although there were marine doctors at other points, there was none at Port Angeles; and we do not think that the master of the Holmes was candid in stating that he thought the doctor at Port Angeles was a marine doctor. His testimony, we think, was colored by his desire to make a better case for himself than the facts justified. The evidence discredits his statement that he inquired of the master of the tug whether there was a marine doctor at Port Angeles, or that he learned that there was a marine doctor at that place, or that Dr. Taylor told him that he was a marine doctor. The master's testimony is contradicted, not only by the appellant, but by Dr. Taylor, and by one of the seamen, a disinterested witness. The evidence convinces us also that the Holmes, in charge of the tug, arrived at Port Angeles about 3 o'clock in the morning, and that if the master had continued on his way to Port Townsend, which was but 20 miles away, he could have reached that port within three hours and before daylight, and he could have placed the appellant in the hands of the marine surgeon at that place at an hour as early as the time when he placed him in the charge of the doctor at Port Angeles. When the vessel was put about and headed in the direction of Port Angeles and Port Townsend, the appellant requested that he be taken to Port Townsend. The master denied the request on the ground that it would cost him $100 more. When testifying as a witness, he stated that the reason which he had assigned to the appellant was not the only reason for refusing to take him to Port Townsend, and that the controlling reason was that he conceived it to be his duty to get the appellant to the nearest place where he could get a doctor. We think, in view of all the circumstances, the true and only reason was that which was assigned at the time—that the master, owning an interest in the vessel, was controlled by his desire to reduce the expense as

far as possible, that his testimony in this respect is marked by the same uncandor that characterized certain other portions thereof, and that his motives are further indicated by the fact that he gave Dr. Taylor, at the time when he left the appellant in his charge, a permit authorizing the appellant to receive medical treatment at the hands of a marine doctor, he well knowing that Dr. Taylor was not a marine doctor, and that the permit was valueless to him for any purpose. In Peterson v. The Chandos (D. C.) 4 Fed. 645, Judge Deady said:

"In this matter I fear the master was actuated by a desire to save expense to the vessel, of which it appears from the answer he is a part owner. In a spirit of petty parsimony he appears to have denied the libelant a chance to have his fractured leg reset and made comparatively useful, rather than incur the trifling expense of sending him from Baker's Bay to the hospital at Portland."

In Whitney v. Olsen, 108 Fed. 292, 47 C. C. A. 331, a case in which a seaman was injured at sea when 500 miles distant from Port Townsend, this court said:

"There is a marine hospital at Port Townsend, and that is where the libelant could have received proper medical treatment, and where the master should have taken him. The ship's obligation to the libelant did not depend on the precise geographical location of the nearest port."

The testimony indicates that, if the appellant had been taken to Port Townsend, the treatment of his arm would have been different from and more appropriate than that which was given him at Port Angeles, and that there was failure at the latter place to treat the injury with the care and skill which its very serious nature demanded. It is impossible to ascertain from the evidence with any degree of certainty how much the injury to the appellant's arm was aggravated by the manner in which it was treated during the seven days of his stay at Port Angeles. We are convinced, however, that thereby the injury was aggravated, and his pain and suffering were greatly increased, and that for the negligence of the master the appellant should be awarded damages in the sum of at least $500.

The decree is reversed as to the second cause of action, and the cause is remanded to the court below, with instructions to enter a judgment for the appellant on that cause of action for the sum of $500.