SPENCER v. BABYLON R. CO. et al.

(Circuit Court of Appeals, Second Circuit. February 13, 1918.)

No. 153.

1. APPEAL AND ERROR ⬤=161—RIGHT OF REVIEW—ESTOPPEL BY ACCEPTANCE OF BENEFITS.

Unless there is a separable controversy, or unless there is some sum to which a party is entitled in any event, he may not accept the benefit of a decree and later appeal.

2. RECEIVERS ⬤=146—REDELIVERY OF PROPERTY—EFFECT.

An order directing the receiver of a corporation to restore the property to the corporation, subject only to the right to issue receiver's certificates to pay taxes and other expenses incurred by him, which was carried into effect, divested the court of jurisdiction over the property and of the power to adjudicate upon the validity of taxes thereafter assessed and levied thereon.

3. COURTS ⬤=282(1)—JURISDICTION OF FEDERAL COURTS—REVIEW OF ASSESSMENT.

Where a state by constitutional statutes has established tribunals vested with exclusive power to make assessments, and provided certiorari to the state courts for review of their actions and for relief against overvaluation and inequality of assessment, a federal court is without jurisdiction to review such an assessment collaterally and to reassess the property, not at least in a case where the plaintiff has not exhausted the judicial remedies so provided.

4. TAXATION ⬤=843—PENALTIES FOR NONPAYMENT OF TAX—PERSONS LIABLE FOR PENALTIES.

Where a corporation unsuccessfully contests the validity of taxes on its property until after they are due and payable, it is subject to the statutory interest and penalties for nonpayment.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in equity by William B. Spencer against the Babylon Railroad Company. Cross-appeals by Henry Tuthill, as County Treasurer, and Arthur Carter Hume, receiver of defendant, from certain orders. Receiver's appeal dismissed in part, and orders affirmed in part. County Treasurer's appeal dismissed.

See, also, 233 Fed. 803.

This case comes up on two cross-appeals—the first, an appeal by Henry P. Tuthill, as county treasurer of Suffolk county, from two decrees herein entered May 8, 1917, by the District Court for the Eastern District of New York; the other, by Arthur C. Hume, as receiver of the Babylon Railroad Company, from the same decrees. The record does not definitely state the nature of the original suit, but it seems to have been the usual bill of sequestration, brought by a creditor of the defendant corporation for the appointment of a receiver and the distribution of the assets of the defendant against dissipation and waste through executions, attachments, and other legal process of the court. Paul T. Brady and Willard V. King were appointed receivers of the property on the 20th day of January, 1911, and Ralph J. Hawkins was substituted in their place on February 15, 1913. On the 24th of October, 1913, the receiver filed his accounts up to September 30, 1913, in which he showed accrued taxes levied upon the defendant amounting to the sum of $5,828.27. On the 12th of December, 1913, the court passed an order directing the receiver to turn back to the defendant all its property, subject to the right of the receiver to issue

⬤=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

receiver's certificates covering the property in amount sufficient to pay the receiver's compensation and all debts and liabilities incurred by him as such. On the 13th of December, 1913, the property was so delivered to the officers of the defendant, who have been operating the same since that time. On the 27th of February, 1914, the court passed an order authorizing the receiver to sell receiver's certificates for the face value of $10,040.51, the proceeds of the same to be used in part for the purpose of paying the taxes due and shown by the report of the receiver, Hawkins, as aforesaid.

Hawkins failed to dispose of the receiver's certificates within the 60 days required by the order, and on the 12th of May, 1914, he obtained an order directing the defendant to show cause why he should not be given further authority to sell them, or again to take into his custody the property of the defendant. This hearing was adjourned from time to time until September 9, 1914. Meanwhile, and on the 24th of July, 1914, the village of Babylon published a notice of sale of the defendant's property for the arrears of taxes, at public auction, for the 15th day of August, 1914. The taxes for which the sale was to be had covered the years 1910, 1911, 1912, 1913, and 1914, and amounted to $846.03. On the 7th day of August, 1914, the defendant procured an order from the District Court directing the authorities of the village of Babylon to show cause why this sale should not be stayed, and this proceeding was adjourned until September 9, 1914, upon condition that the taxes for the years 1910 and 1911 should be paid, and they were so paid on the 27th of August, 1914, to the amount of $305.79. When this last proceeding, together with the receiver's proceeding, came on for a hearing, on September 9, 1914, the matter was again adjourned until the 16th of October, 1914, when the court granted a permanent injunction against the village of Babylon, forbidding any sale for taxes levied for the years 1912 and 1913, but for some reason undisclosed no order was ever entered on this decision.

This being the posture of the case on January 13, 1915, the District Court signed an order to show cause against the villages of Babylon and Amityville, and the town of Babylon, and the county treasurer of Suffolk county, for a permanent injunction restraining them from selling the property of the defendant for any taxes during the years 1910, 1911, 1912, 1913, and 1914. This application was made upon affidavits by the president of the defendant and its auditor. The basis of the application was that the defendant had discovered that the taxes for the years in question were improperly levied, excessive in amount, and not valid liens against the property of the defendant, and that the receivers of the company never took any steps to review such taxes or assessments or to reduce them. The matter remained undecided, and on October 16, 1915, the county treasurer of Suffolk filed a notice of motion alleging that upon the final hearing he would pray for an order declaring that the taxes set forth in certain earlier answering affidavits of Tuthill and Leslie be adjudged to be valid liens upon the property of the railroad company, entitled to immediate payment, and for an order directing sale. On November 5, 1915, and following, testimony was taken upon the validity and amount of the taxes in question, and finally, on May 18, 1916, the court filed an opinion (233 Fed. 803) fixing the fair valuation of the special franchise taxes for each year up to the year 1915 at $23,000. These franchise taxes were substantially the only taxes contested between the parties. This opinion was followed on the 12th day of July, 1916, by an order of the court fixing the value of the private property at a stated sum per mile and the total value of the special franchise at $23,000. This order was based upon a reassessment of the property, in disregard and correction of the assessments of the New York state board of tax commissioners, and included the years 1910 to 1914, inclusive.

There ensued a number of complicated proceedings looking to the enforcement of this order, among them an application by Tuthill, county treasurer, asking that the taxes of 1915 be likewise included upon the same terms. Eventually the court, at the instance of the present receiver, Hume, undertook to correct certain errors in the order of July 12, 1916, and to submit the taxes of 1915 and 1916 to the same reassessment. To this end eventually two orders

were entered on May 8, 1917, which are those appealed from. These orders together fixed the equalized assessment of the special franchise assessments at 60 per cent. of $23,000, or $13,800, and included the taxes of 1915 and 1916. In respect of these two changes the county treasurer now complains, being satisfied with the order of July 12, 1916. The county treasurer received the payments required by these orders on May 17, 1917, and on May 21, 1917, took an appeal from each. The appeal of the receiver was taken later. The receiver then moved to dismiss the appeal of the county treasurer, on the ground that by receiving payment in full under the orders of May 8, 1917, he had waived any right to appeal. Upon his own appeal he urged only three points: First, that there was no ground for any assessment for special franchise; second, that certain taxes on the private rights of way were illegally levied on the face of the roll, because not properly distributed between districts; third, that no interest or penalties should have been allowed against the defendant.

Arthur Carter Hume, of New York City, for appellant. Hume.

Percy L. Housel, of Riverhead, N. Y., for appellant Tuthill.

Before WARD and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1] The appeal of the county treasurer must be dismissed. The general rule is well settled that unless there is a separable controversy, or unless there is some sum to which the appealing party is entitled in any event, he may not accept the benefit of the decree and later appeal. Chase v. Driver, 92 Fed. 780, 34 C. C. A. 668; Albright v. Oyster, 60 Fed. 644, 9 C. C. A. 173. There was here no separable controversy, such as existed in Goepel v. Kurtz, 216 N. Y. 343, 110 N. E. 769, Carson L. Co. v. St. Louis & S. F. R. Co., 209 Fed. 191, 126 C. C. A. 139, and Snow v. Hazlewood, 179 Fed. 182, 102 C. C. A. 448, for the whole claim turned upon the proper amount of the assessment for special franchises. Nor was there any sum concededly due to the county treasurer, since the receiver contended from the outset that there was no basis for any special franchise tax whatever. Indeed, if the receiver should have succeeded in his contention below or in this court, the county treasurer would have to restore the payment which he has already collected. Nor do we think that the provision in the opinion, not the decree, covered this question, assuming that the court below could affect the right to appeal in any way, a point we do not decide. The opinion only provided that an appeal by the municipal authorities should not stay their rights to collect their taxes. What effect the collection of the taxes should have upon the right to appeal was a very different matter, and one which the District Court did not attempt to determine whatever its power. Indeed, the whole point is irrelevant, as the opinion of the court is not a part of the decree, and the provisions of the decree touching appeals has nothing to do with the question.

[2] Coming, now, to the appeal of the receiver, we think that the whole proceedings to review the assessments were in fact without jurisdiction, and that they should not have been attempted over the objection of the county treasurer. As to the taxes of 1915 and 1916, they were assessed after the time when the custody of the res had

passed from the District Court (the assessment and probably the levy for 1914 was before December 13, 1913). Assuming, as we may, that that court had the right, after December 13, 1913, to reserve the issuance of receiver's certificates to pay for assessments for taxes and other receiver's expenses incurred during pendency of the receivership, and even assuming that as an incident to that reservation it had the power to enjoin the assertion of these taxes in so far as it might be necessary to a complete disposal of the controversy, nevertheless the reservation could not extend beyond those matters which were left undecided at the time the court lost custody and none of the subsequent taxes under any construction lay within the further power of the court. We do not agree that, having lost custody, the court could reserve a general jurisdiction under a reserved power to resume possession at some future time.

[3] We think, moreover, that the District Court was also without jurisdiction in its review of the assessments for special franchises for the years 1910–1914. Under the statute of New York the power to assess special franchises is vested in the state board of tax commissioners, an official body with sole jurisdiction for that purpose. New York Tax Law (Consol. Laws, c. 60) §§ 43, 44, 45. An adequate means of review of their assessment is provided in that statute by certiorari in the Supreme Court of the state, under section 46. Now there was no question in the case at bar of the jurisdiction of the state board of tax examiners, or of any irregularity in the assessment, levy, or extension on the rolls by which the tax was imposed. The law of New York gives an assessment once made with jurisdiction the force of a judgment which cannot be collaterally attacked. Swift v. Poughkeepsie, 37 N. Y. 511; U. S. Trust Co. v. New York, 144 N. Y. 488, 39 N. E. 383. No error as to the actual value of the property assessed is open for reconsideration (People ex rel. Insurance Co. v. Coleman, 107 N. Y. 541, 14 N. E. 431; New York v. Chase, etc., Co., 206 N. Y. 3, 99 N. E. 143), though this limitation does not, of course, apply any more than in the case of a judgment, if the assessors had no jurisdiction (Bruecher v. Portchester, 101 N. Y. 240, 4 N. E. 272). Article 13 of the Tax Law (sections 290–294) gives full relief against overvaluation and inequality of assessment, and it is through it alone that the assessment may be assailed. The state of New York having the power, subject, of course, to constitutional limitations, to levy its taxes by such officers as it sees fit, no court may set aside the acts of the assessors and reassess the property, since that is not a judicial act, and a judge has no more power to do it than a layman, whether the question arise at law or in equity.

The only ground for the exercise of such a power is as an incident to the right to set aside the assessment as unconstitutional. This the Supreme Court, in Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757, and Greene v. Louisville & Interurban R. R. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88, did, holding that an assessment may be reopened, and furthermore that the property may in effect be reassessed, by compelling the plaintiff to consent to a fair assessment

upon its property. These cases, however, both proceed upon the assumption that the arbitrary and discriminating action of the assessors was in violation of the Fourteenth Amendment. They each arose on independent bill in equity, explicitly laid upon the violation of the United States Constitution, and we do not read them as indicating that an assessment regularly made may be reviewed upon the mere allegation that the assessment was erroneous, even though the error proceeded from a deliberate effort to overvalue the plaintiff's property, which might properly be deemed a fraud. In the case at bar there was no suggestion of any unconstitutional conduct of the state board of tax commissioners, nor indeed the least ground for such an assertion. At most the facts justified an error in the way in which the assessment was made.

Moreover, in each of the cases cited there were no means provided in the state statute by which the action of the assessors could be judicially reviewed as can be done in New York by certiorari. Now it is true that the Supreme Court mentioned this fact only upon the question of the plaintiff's right to equitable relief, but we think that the distinction may be taken as going deeper. While there may be unconstitutional discrimination merely through their administration of a valid statute by officials, the action prohibited by the Fourteenth Amendment must be that of the state, and it cannot be said, at least under ordinary circumstances (Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868), when the state has itself provided means for the correction of just such miscarriages, that the initial action of its officials is its own until the final result has confirmed it and made idle further appeal to the state authorities. Therefore we should be slow, if the receiver or the defendant had indeed based its claim upon the Fourteenth Amendment, to admit any jurisdiction to review an assessment in the face of section 46 of the New York Tax Law.

What we have said about the assessment of the special franchises applied equally to the equalization, since under section 45a, subdivisions 1 and 2 (as added by Laws 1911, c. 804), prior to 1916, the state board was itself to equalize the assessment, and the supervisors must enter that sum upon the rolls. As equalizer the state board was as exempt from judicial review as it was as assessor. In so far, therefore, as the District Court attempted any review of the special franchise assessments as fixed, and necessarily as equalized, by the state board of tax commissioners, we think that it exceeded its jurisdiction. This point the county treasurer raised originally, and could certainly raise it here, if his appeal were before us. Upon the receiver's appeal we think the point is still open, because the question is not one which the consent of the parties can cure; rather it goes to the assertion of a jurisdiction over a subject-matter which under these circumstances the District Court did not and could not exercise.

We may assume that it was open to the District Court to correct any errors upon the face of the rolls, taking the assessments as they stood as to the taxes before 1915, and that the court had jurisdiction to that end. However, aside from the correction of the assessment, the receiver raises no question of the orders of May 8, 1917, except the

validity of the taxes on the private right of way for 1912, and the penalties and interest charges. As to the objection to the regularity of the private right of way taxes for 1912, we find upon the assessment rolls for that year the apportionment of the assessments between the several school districts (page 33). The apportionment of the special franchise tax was made by an independent certificate. This apportionment of the private right of way assessment upon the roll itself seems to us to have been sufficient under the amendment to section 40 of the Tax Law passed in 1912 (Laws 1912, c. 271). It is true that no certificate as required to section 40 appears in the record, but we assume that the assessment rolls were signed as a whole and when the prescribed apportionment was made upon the roll itself the general certificate was sufficient.

[4] There remains only the question of penalties and interest. The order of July 12, 1916, allowed only interest upon the taxes as reassessed, but the modified order of May 8, 1917, changed this by allowing the statutory penalties and the interest. We see no reason why the penalties and interest should not have been allowed upon the taxes on both private rights of way and special franchises. The court had jurisdiction to reassess neither, and the amounts remained as fixed on the rolls. The defendant litigated their validity at its peril. The power of the District Court was limited to declaring void such taxes as were levied without jurisdiction, and perhaps such as were illegal upon the face of the rolls. It was therefore inevitable that penalties and interest should have been allowed. As to the 5 per cent. penalty, this, it is true, depended, under section 73 of the Tax Law, upon a notice from the county treasurer to the collector of taxes; but we are to presume that the authorities did those things rightly which should have been done, and that after the taxes had been levied and remained unpaid for 30 days the notice was given.

In disposing of the cause we must dismiss the receiver's appeal in respect of those assignments of error which raise matters over which the District Court had no jurisdiction. We can neither affirm nor reverse the orders in these respects, and yet the case is not one under section 5 of the Act of March 3, 1875 (18 Stat. 472, c. 137 [Comp. St. 1916, § 1019]), where we must dismiss the whole proceedings, since the court had jurisdiction to consider the validity of the taxes in some respects. We might, it is true, vacate the injunction and restore the taxes to the original sums upon the assessment rolls; but that we could do only upon the county treasurer's appeal, which is not before us. In such respects as the District Court had jurisdiction, we affirm the orders.

Therefore we dismiss the receiver's appeal upon his fourth and fifth assignments of error, and we affirm the orders upon the first, second, third, and sixth assignments of errors. We dismiss the county treasurer's appeal. The orders of May 8, 1917, will therefore stand, but their effect upon the rights of the parties, in any collateral proceedings in other courts, we do not assume to consider.