**ALTMAN et al. v. SHOPPING CENTER BLDG. CO. et al.**

**No. 10391.**

Circuit Court of Appeals, Eighth Circuit.
March 11, 1936.

A. Z. Patterson and Clyde Taylor, both of Kansas City, Mo. (D. C. Chastain, of Kansas City, Mo., on the brief), for appellants.

Richard S. Righter and Cyrus Crane, both of Kansas City, Mo.. for appellees Arthur P. Tureman and others.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

WOODROUGH, Circuit Judge.

On the motion of Mr. and Mrs. Tureman to dismiss the appeal of the Altman

heirs allowed by the trial court to review a portion of its decree.

The original bill in equity which was filed by the plaintiff Shopping Center Building Corporation, a Delaware corporation, in this case on August 26, 1933, is not included in the record, but it appears to have made parties all persons who had or claimed an interest in lots 44, 45, and 46 in Swopes addition and the Altman Building thereon, at the corner of Eleventh and Walnut streets in Kansas City, Mo. After the bill was filed, and on September 2, 1933, all of the parties appeared in person or by attorney, and, after a hearing, the trial court entered an interlocutory order in which it found that the improvements on the land were connected and operated as one building, known as the Altman Building; that it was all in the possession of the plaintiff as lessee and occupied by plaintiff and a large number of subtenants claiming under plaintiff; that various and conflicting claims of default were being made, demands for forfeiture and possession asserted, and suits concerning the possession had been brought and were threatened; and that irreparable injury would ensue unless injunction issued. Accordingly, an order was entered impounding the net revenues of the building and enjoining all the defendants from proceeding against the plaintiff or the property otherwise than in the one suit. The parties acquiesced in the interlocutory order.

It appears that there are three long-time ground leases covering the three lots upon which the Altman Building rests, referred to as the Adams, Walpole, and Pasfield leases, respectively, all of which had been acquired by the Merchants Realty Company from the owners, referred to as the Altman heirs, on April 21, 1919, pursuant to a written indenture of that date. By the terms of the indenture the Merchants Realty Company had been required to and had paid an immediate consideration of $40,000 in cash to the Altman heirs and had discharged $80,000 of encumbrances, and agreed to pay the Altman heirs $24,000 per annum throughout the concurring period of the three leases and a reduced sum thereafter until the termination of the last lease. The indenture provided that the Altman heirs leased to the Merchants Realty Company "the real estate described in the said Adams, Pasfield and Walpole leases, including all buildings and improvements thereon, * * * located upon the premises and including any and all * * * interests of the said Altman heirs in connection therewith"; the intention being "to let and lease to said Company everything pertaining to said properties, so that the said Company may have and enjoy all property and rights which the said Altman heirs, in absence of this instrument might themselves have and enjoy." The Merchants Company assumed all the obligations of the leases and there were provisions for forfeiture to the Altman heirs in case of default in the obligations of the leases or of the indenture. On May 26, 1933, the Merchants Realty Company assigned the leases and turned over the property to the plaintiff Shopping Center Company, which assumed all the obligations of the Merchants Realty Company in regard thereto. The plaintiff failed to pay a tax on lot 46 due June 1, 1933, and on August 16, 1933, the owners of the fee of the lot served notice of forfeiture pursuant to the provisions of their ground lease unless payment of the tax was made in ten days. Two days afterwards, on August 18, 1933, the Altman heirs served notice upon the Shopping Center Company that default existed under the terms of the indenture of April 21, 1919, for failure to pay taxes assessed against the real estate demised under the Adams, Pasfield, and Walpole leases, and demanded to be restored to the possession of the property within ten days. The suit in equity of the Shopping Center Company in which the revenues of the property were impounded and the injunction as issued was filed, as stated, within that ten-day period, on August 26, 1933, and the parties filed their pleadings and joined issues in the suit.

The plaintiff Shopping Center alleged among other things in its amended bill that prior to the year 1932 the revenues from the Altman Building had been sufficient to pay all ground lease charges and also the $24,000 per annum payable to the Altman heirs under the said indenture and to enable the Merchants Company to accumulate a reserve of approximately $30,000, but that throughout the business depression the income had continuously decreased and the reserve had been exhausted and the income had become barely sufficient to pay ground rents, taxes, insurance, and cost of operation, and was insufficient to permit of any payments to the Altman heirs. It was alleged that the indenture of April 21, 1919, between the Altman heirs and the Mer-

chants Company was in truth and fact an assignment and was not a sublease and that the Altman heirs had not reserved to themselves and did not have any legal interest in the Altman Building properties or leaseholds. The position of the plaintiff was that if the court would protect it against lawsuits pending and threatened and the forfeitures declared and threatened and permit it to apply the net revenues of the building to the ground rent charges and taxes and permit it to efficiently operate the property for the benefit of all interested parties, it would be able to and would pay all obligations and also "any personal obligations which may rightfully become due to the Altman heirs."

The Walpole ground lease covering lot 46 contained provision for reappraisal and changing the rental rates at intervals and the fee owners had been claiming that their lot, which is the corner lot, was undervalued, and attempting for several years to get the ground rent raised. It was alleged in the bill that the plaintiff Shopping Center, upon becoming assignee of the Merchants Realty Company, had entered into a compromise agreement with the fee owners of lot 46 to increase the rent on that lot from $20,000 a year to $30,000 for the period from September 1, 1933, to February 28, 1935, and to $40,000 a year for the next five years.

Mr. and Mrs. Tureman, who own the fee of the corner lot 46 in the entirety, pleaded, among other things, that they had served upon the plaintiff a ten-day notice to pay overdue taxes and that the taxes had been paid by someone. If they were paid on behalf of the plaintiff, then the plaintiff was not in default. But that the indenture of April 21, 1919, was an assignment and not a sublease and the Altman heirs had no estate in the property, and if they had paid the tax for their sole benefit they were volunteers and the plaintiff was in default. They admitted that they had made the agreement with the plaintiff to increase the ground rent on their lot after September 1, 1933, and prayed that their title to the lot be quieted as to any claim of the Altman heirs to any interest in the same. They also prayed for termination of the ground lease and for possession if default should be found to have been made. But in their amended pleading it was alleged that their "immediate interest * * was not the forfeiture of the (Walpole) lease * * * but to secure prompt pay-ment of the rent" specified in the ground lease and increased by the agreement with the Shopping Center Company.

The Altman heirs pleaded that the indenture of April 21, 1919, was a sublease and not an assignment and that the plaintiff had forfeited to the Altman heirs whatever interest it had acquired in the Adams, Pasfield, and Walpole leases by reason of default in payment of taxes and that the Altman heirs had served notice upon the plaintiff and had demanded possession and were entitled to possession of the entire property under the terms of the indenture, a copy of the indenture being attached to the pleading. They alleged that the plaintiff's default in the payment of the taxes and refusal to deliver the property to the Altman heirs had been brought about "under the domination of Mr. and Mrs. Tureman" and had caused them loss and damage in the sum of $120,000 because they could have rented the property at an increased rental of $2,000 a month for five years on or about August 30, 1933. They had had to incur attorney's fees in the sum of $20,000 and the taxes they had been obliged to and had paid amounted to $13,998.25. They prayed for immediate possession of the property and for judgment against the plaintiff and Mr. and Mrs. Tureman in the total of those three sums, to wit, $153,998.25, and for the payment to themselves of the impounded revenues.

Thereafter, in May, 1934, they filed an amended answer and cross-bill in which they omitted any claim against Mr. and Mrs. Tureman for damages on the ground that the Altman Building could have been rented at the greater rentals referred to. They reasserted that their indenture of April 21, 1919, was a sublease and not an assignment and that "without regard to whether it be denominated a sublease or an assignment all of the rights reserved to the Altman heirs thereunder are valid * * precisely as if the Altman heirs were at law a landlord and the Merchants Realty Company and its successors were tenants." That they had declared a forfeiture against the Shopping Center Company and the Merchants Realty Company for default in payment of taxes, which taxes they had been obliged to and had paid themselves.

The indenture of April 21, 1919, contained no restriction against alienation by the Merchants Company, which, as stated, had paid out $120,000 cash consideration for the same. But the Altman heirs took

the position in their amended pleading that the Shopping Center Company had a very small capital ($1,000) and that a fraud was practiced upon them when the Merchants Company assigned the leases to the Shopping Center and the Shopping Center took them over and entered into possession of the property. They alleged that the capital stock of the Merchants Company was bought up and the Shopping Center was organized, and the leaseholds were transferred to it in pursuance of a conspiracy between Mr. and Mrs. Tureman, their son Robert, and their attorney. The object of the conspiracy was to put the property into the hands of the irresponsible plaintiff corporation and to defraud the Altman heirs of their interest in the property by having the Shopping Center refuse to pay them the $24,000 a year reserved to them by the indenture of April 21, 1919, "in the hope that the Altman heirs would be unable promptly to pay rent, taxes, insurance and their other obligations"; by fixing an increased ground rent for lot 46 and by making default in the ground lease covenants which were obligatory upon the Altman heirs. That because of their conspiracy and the part they had taken in the transfer to the Shopping Center Company, Mr. and Mrs. Tureman should themselves be deemed to be the Shopping Center Building Company and should be held to be personally liable on the obligations of the Merchants Realty Company assumed by the Shopping Center Building Company, including the obligation to pay the Altman heirs $24,000 a year. In this amended bill the Altman heirs did not pray for immediate possession of the property. The impounded revenues were then insufficient to meet ground rent and tax charges against the property. They allege that "the situation herein presented can be met * * * only by this court taking possession of said property in receivership * * * to the end that said property may be managed alone with the idea of preserving the full value therein * * * and by this court assuming jurisdiction of the entire controversy." The receiver could "pay prior obligations with respect to the property such as taxes and underlying rents" and the court could "determine the rights of the parties and in the meantime preserve such rights for final disposition." They prayed to have it adjudicated that the Altman heirs were the lessees under the three ground leases and entitled to all the rights therein stipulated and that "if it be determined that the instrument from the Alt-

man heirs to the Merchants Realty Company is in legal effect an assignment and not a sublease, that the court determine all the rights of the Altman heirs thereunder." They also prayed to have the agreement to raise the rent under the Walpole lease avoided and to have it decreed that Mr. and Mrs. Tureman "are bound to perform all the obligations to the Altman heirs of the Indenture of April 21, 1919."

Thereafter the Altman heirs again amended their pleading by adding thereto the following: "* * * that if it shall herein be adjudged that A. P. Tureman and Kathleen Tureman are not liable to the Altman heirs on the obligations of the Merchants Realty Company and Shopping Center Building Company to the Altman heirs, then and in that event that the Court herein shall decree that all rights of the Shopping Center Building Company in the premises are forfeited and that the Altman heirs shall re-enter the property in question and possess all rights therein under the various ground leases described in the pleadings, free from all possession, right, title or interest in the Shopping Center Building Company."

The owners of the fee of lot 44 pleaded that the rents due to them since November 1, 1933, were unpaid as well as certain special assessments, the total amounting to $16,604.18, and that they had declared forfeiture and served notice thereof and were entitled to immediate possession of their lot, for which they prayed. They did not use the word "conspiracy," but charged that Mr. and Mrs. Tureman had caused the incorporation of the plaintiff and the transfer of the leases to it, and that they were in control of the corporation and planned to acquire for themselves the net revenues arising from the operation of the Altman Building, and had counseled and directed the breaches in the covenants of the ground lease (the failure to pay rent and taxes), and had caused the suit to be brought by the plaintiff Shopping Center Building Company, and had made themselves liable to perform the obligations of the ground lease on lot 44, including the payment of fees to the attorneys employed by the lot owner. They prayed judgment against the plaintiff, the Altman heirs, and Mr. and Mrs. Tureman, and also that Mr. and Mrs. Tureman be excluded from receiving anything out of the revenues from the property impounded by the court until they (the owners of lot 44) were fully paid out.

The owners of the fee of lot 45 charged on information and belief that Mr. and Mrs. Tureman had intentionally and willfully induced and caused defaults in, disabled the performance of, and interfered with the rights and duties under, their lease; and they prayed judgment for their rent with interest and penalties, taxes, and attorney's fees against the plaintiff, and that if the court should find unlawful interference with their lease by Mr. and Mrs. Tureman "that the defendants Tureman respond to these defendants therefor" and that the impounded revenues "so far as the defendants Tureman are entitled thereto be impressed therewith and subjected thereto."

It will be noted from the foregoing outline that the whole litigation hinged upon actions taken by the Merchants Realty Company and the Shopping Center Company that were, of themselves, lawful. The Merchants Company had lawful right to transfer and deliver possession of the Altman Building and leases for which they had made a down payment of $120,000 because their indenture specifically so provided. ("Said Company may assign its leasehold.") The Shopping Center Company had lawful capacity to acquire and take the properties. The Altman heirs accepted several installment payments due them under their indenture from the Shopping Center after Shopping Center had taken possession. When the revenues from the properties became insufficient to meet both the ground rent charges and the payments to the Altman heirs, the Shopping Center had lawful right to raise the point that by their indenture of April 21, 1919, the Altman heirs had made an assignment of and parted with their interest in the property and that the revenues should be applied to ground lease charges ahead of such general debt as the Altmans would have if they had parted with their estate as landlords. The Shopping Center was advised by its counsel that the effect of the indenture was to divest the Altman heirs of their interest in the properties, and there is no allegation in any pleading that the point was made in bad faith. On the contrary, the Altman heirs themselves pleaded in the alternative that if their indenture was an assignment and not a sublease the court of equity should determine their rights on that basis. The question was vital in the litigation and would undoubtedly have been raised by the Merchants Realty Company after Robert W. Tureman acquired the stock thereof even if no transfer had ever been made to the Shopping Center Company.

As to the agreement made by Shopping Center to pay increased ground rent for the corner lot, the increase of rental was not to go into effect until after September 1, 1933, and before that date arrived the Shopping Center had commenced the suit which brought the parties and the property within the jurisdiction of the equity court, and in which all of the net revenues of the property were, by the court, impounded to abide its decree.

Upon the commencement of the suit the Altman heirs were out of possession of the property, as they had been since their indenture of 1919, the legality of their claim to any right, title, or interest in the property was presented for determination, and they were obliged to and did invoke the equity jurisdiction of the court to preserve the property and the leaseholds, not only against immediate disintegration and forfeiture or pending adjudication of their claims, but until a sufficient fund could be accumulated from the revenues of the property to enable the Altman heirs to meet the underlying charges and to comply with the obligations of the ground leases to the fee owners.

Upon the trial of the case in the District Court a decree was entered on January 2, 1935, which recited that it was final except as to the matters for which jurisdiction was reserved. It was adjudicated that the indenture of April 21, 1919, was a sublease and not an assignment and that the rights of the Altman heirs thereunder were those of a landlord and not of an assignor and that the estate of the plaintiff Shopping Center was forfeited and ended; that the rent raising agreement as to lot 46 was void; that the Shopping Center Company was indebted to the Altman heirs for the use and benefit of the fee owners in the amounts specified in the ground leases and was also indebted to the Altman heirs for their own use in the amounts specified in the indenture of April 21, 1919, for the period during which the Shopping Center had held the property from May 26, 1933, to January 1, 1935, less the payments made by the Shopping Center Company, also for taxes paid by the Altmans; and judgment was awarded against the Shopping Center Company in the total sum of $99,081.57. The Shopping Center Company was ordered to turn over the property

to the Altman heirs and the Altman heirs were allowed ninety days to pay the rent due to the fee owners, then found to amount to $41,083.32. The Altman heirs were required to apply the net revenues from the property to the payment of ground rent and charges and to make monthly reports in writing of their receipts and disbursements, the fee owners being denied any attorney's fees called for by the ground leases and restrained from declaring any forfeitures during the ninety-day period. The claims made by the fee owners and the Altman heirs that Mr. and Mrs. Tureman were personally liable to them, on any ground, were denied. The court reserved jurisdiction to further limit, extend, or modify terms upon which relief from forfeitures might be granted and to control accounting of the impounded funds and to assess damages if any on the injunction bond given by the Shopping Center Company. Afterwards, on March 29, 1935, on application of the Altman heirs, the court entered an order that it further reserved exclusive jurisdiction to decree forfeitures under the Walpole lease for nonpayment of taxes by the Altman heirs in the year 1935, or nonperformance of any other provision of the ground lease.

On application of the Altman heirs, the District Court granted them an appeal "only from that portion of the * * * decree * * * about which complaint is made in the assignment of errors, and the court reserves to itself jurisdiction for the enforcement as in the decree provided of all provisions concerning which no assignment of error is made."

In the assignment of error referred to the Altman heirs assign that the court erred in refusing to decree that Mr. and Mrs. Tureman were personally liable for the obligations of the Shopping Center Building Company found by the court in the decree as above stated, amounting to $99,081.57 (being substantially all the amounts which accrued according to the terms and provisions of the Altman-Merchants indenture during the pendency of the case in the District Court). It does not appear upon what considerations the trial court imposed judgment for rent against the Shopping Center Company for the period during which the court, by interlocutory order, had taken all beneficial use of the property; that is, the net revenues, away from the Shopping Center. There are no findings of fact or conclusions of law as required by the rule (70½). The Altman

heirs qualify their assignment of error by stating that they disclaim objection or exception to any other provision, finding, or judgment in said decree, and they pray that the decree be reversed in the particulars specified in the assignment. They adopt the adjudication of the trial court that the Shopping Center Company was obligated to them in the sum of $99,081.57 and seek only to impose the same obligation upon Mr. and Mrs. Tureman.

Mr. and Mrs. Tureman have moved to dismiss the appeal so attempted to be taken from a portion of the decree and have filed the affidavit of Mr. Richard S. Righter in support of their motion.

The affidavit is uncontradicted and establishes that upon rendition of the decree the Altman heirs took possession of the Altman Building properties and took credit from the fee owners for the impounded revenues. The Altman heirs sought and obtained the court's protection against any forfeiture on account of their defaults in payment of delinquent ground rents until February 2, 1935. On that date they paid up the delinquent rents out of the revenues of the building. They received and accepted assignments of all subleases from Shopping Center Company and accounts receivable due from subtenants and also the current insurance policies. In July of 1935 they were in default as tenants under the Walpole lease for nonpayment of taxes and they applied to the District Court to exercise the jurisdiction reserved under the order of March 29, 1935, and to protect them against forfeiture on account of their default. The trial court ordered a moratorium until September, 1935.

The motion to dismiss the partial appeal is upon the grounds, among others, that the decree was unitary and that the appellants have waived review by voluntarily taking the benefits of the decree. We have concluded that the motion to dismiss should be sustained upon the grounds presented.

It is clear upon the whole record that the decree of the trial court adjusted the many conflicting claims of the parties according to a single plan worked out by the court and invited by the Altman heirs, as they put it in their pleading, "to meet the situation presented." The chancellor has balanced equities between the parties. He declared that: "To construe the Altman-Merchants Realty Company contract as an assignment would give an unconscionable

advantage over the Altman heirs. Moreover, it would work irreparable wrong and damage to them. The first maxim of equity is that 'Equity will not suffer a wrong to be without a remedy.'" He avoided the rent raising agreement, whether upon equitable considerations or because of limitations upon the power of the lessee under the Altman-Merchants indenture is not clear, and by his injunctional order of September 2, 1933, he prevented the rent fixing agreement from ever taking any effect against the Altman heirs. He denied forfeiture to the owners of the fee title to lots 44 and 45. He has refused to require the Turemans to make the payments called for by the Altman-Merchants indenture, but he has forfeited all rights under that indenture to the Altman heirs and has not only restored the property to them, but has protected them from their defaults during the suit and long after final decree. He has found the Shopping Center Company obligated to pay the Altman heirs $99,081.57 and awarded judgment against the company in that amount.

The only fair inference to be drawn from all of the terms of the decree is that the chancellor found and considered that there were equities in favor of the Altman heirs arising out of the conduct of Mr. and Mrs. Tureman which justified using the extraordinary powers of the court of equity to readjust and preserve the relationship of the Altman heirs as tenants under the three leases, to withhold from the Turemans rights of forfeiture plainly accorded them in their ground lease, and to cause all of the net revenues of the property to be applied for the benefit of the Altman heirs from practically the commencement of the suit so as to preserve the status of the Altman heirs as lessees under the ground leases. The gist of the fraud and conspiracy charged was the financial irresponsibility of the Shopping Center Company. If the court had considered that the financially responsible Turemans were in any wise answerable for the engagements of the Shopping Center, it is not indicated that the indenture on which the Altman heirs had been paid more than $400,000 would have been forfeited back to them and the rights they had transferred so completely restored and preserved to them by equity processes. The refusal of the District Court to require the Turemans to pay any money to the Altman heirs is not a matter that is separable or distinct from the relief which was granted by the decree. It is integral with and related to the alternative remedies accorded to the Altman heirs in order to effectively reinvest the property in them and do justice to them.

The Altman heirs have accepted the benefits of the exercise of the court's equity powers in their behalf; the maintenance of the integrity of the leaseholds pending adjudication; the application to their credit of all the net revenues of the property from practically the commencement of the suit; the restitution of the property to them and the equitable protection accorded them against the covenants of the ground leases. Although they did not bring the suit in the first place, they did affirmatively invoke the exercise of the equity powers which saved them their inheritance. By the acceptance of the benefits of the decree, they are precluded from attacking it on appeal. If they believed themselves entitled to have the Turemans make the payments called for by the Altman-Merchants indenture, they could have stood upon that claim. But they, apprised the District Court, by their alternative pleading, that if it should be adjudged that the Turemans were not so liable then they prayed that the extraordinary equitable remedies be granted, of which they have taken full advantage. Terry v. Abraham, 93 U.S. 38, 23 L.Ed. 794; Smith v. Morris (C.C.A.3) 69 F.(2d) 3, 5; United Engineering & F. Co. v. Cold Metal Process Co. (C.C.A.3) 68 F.(2d) 564; Finefrock v. Kenova Mine Car Co. (C.C.A.4) 37 F.(2d) 310, 314; Oriole Phonograph Co. v. Kansas City F. P. Co. (C.C.A.8) 34 F.(2d) 400; Allen v. Bank of Angelica (C.C.A.2) 34 F.(2d) 658; Redondo S. S. Co. v. A. McNeil & Sons Co. (C.C.A.2) 16 F.(2d) 462; In re Minot Auto Co. (C.C.A.8) 298 F. 853, 857; Spencer v. Babylon R. Co. (C.C.A.2) 250 F. 24, 26; Chase v. Driver (C.C.A.8) 92 F. 780, 786; Albright v. Oyster (C.C.A.8) 60 F. 644. See, also, New York Tel. Co. v. Maltbie, 291 U.S. 645, 54 S.Ct. 443, 78 L.Ed. 1041; Lindheimer v. Illinois Bell Tel. Co., 292 U.S. 151, 54 S.Ct. 658, 78 L. Ed. 1182.

The appellants, in resistance to the motion to dismiss their appeal, have cited cases which develop the exceptions to the general rule governing appeals by litigants who have accepted benefits. Among others, Gilfillan v. McKee, 159 U.S. 303, 311, 16 S.Ct. 6, 9, 40 L.Ed. 161; Reynes v. Dumont, 130 U.S. 354, 394, 9 S.Ct. 486, 32

528

L.Ed. 934; Armstrong v. Lone Star Refining Co. (C.C.A.8) 20 F.(2d) 625; Carson Lumber Co. v. St. Louis & S. F. R. Co. (C.C.A.) 209 F. 191, are cited.

In Gilfillan v. McKee, supra, the court said: "While the acceptance of the whole or a part of a particular amount awarded to a defendant might, perhaps, operate to estop him from insisting upon an appeal, there were practically two decrees in this case,—one applicable to the special fund, which, in the bill, the subsequent pleadings, and in the decree, had been kept as a distinct and separate matter, a portion of which fund was awarded to McPherson; and the other applicable to the general fund, in which McPherson had been denied any participation whatever. * * * There is nothing inconsistent in his action in accepting the amount awarded to him from the special fund, and appealing from the refusal of the court to award him the general fund." No similar or analogous situation is to be found in this case.

In Armstrong v. Lone Star Refining Company, supra, this court said that the well-settled rule, that a party who enforces or otherwise accepts the benefit of a judgment, order, or decree, cannot afterwards maintain an appeal or writ of error to review the same, has no application to a case where the appellant is concededly entitled, in any event, to the sum which he has received. Likewise, Reynes v. Dumont, supra, and Carson Lumber Co. v. St. Louis & S. .F. R. Co., supra, are to the same effect. But there is no application to this case where all of the claims of the Altman heirs were in dispute and the relief accorded them, including the personal judgment against the plaintiff, resulted entirely from a balancing of rights and equities.

The appeal is dismissed at the cost of the appellants.